## REEDY *v.* SCOTT.

1. Though as a general rule suits for infringement of a patent, are defeated by the surrender of the patent, and a new original bill—not a supplemental bill—is the proper sort of bill by which to proceed for an infringement under the reissue, yet where there has been a surrender and reissue, and the patentee has proceeded by a supplemental bill—the defendant making no objection to this sort of proceeding, but allowing proofs to be taken and the suit to proceed otherwise to a conclusion, as if the irregularity were wholly unimportant; the two parties proceeding respectively throughout the trial upon the assumption and concession that the reissued patent was substantially for the same invention as that embodied in the original patent—all objection to the irregularity in proceeding by a supplemental bill instead of by a new original one must be considered as waived.

2. Where, pending a bill in a Federal court for the infringement of a patent, the parties have agreed to submit the question whether a machine made by the defendant was an infringement, to a solicitor of patents, and to abide by his decision, and that if he decides that it is not, then that the bill in said suit shall stand dismissed; and the referee does decide that there is no infringement, but the complainant instead of having his original bill dismissed and filing a new original bill, files a supplemental bill alleging a surrender and reissue, and that the reissue is "for the same invention" as was secured by the original patent : in such case if it appear that the parties throughout the trial have treated the invention secured by the reissue, as substantially the same invention as that secured by the original letter, and have raised no issue about exact specification or any of those differences which may properly exist between a claim in an original patent and a claim in a reissue, but on the contrary have impliedly admitted substantial identity, having taken the issue on other matters, the matters, to wit, whether the complainant was not deceived when agreeing to refer, and whether the right of the referee to make any award was not legally revoked before any award was made by him, and whether, therefore, the award was not void : in such case if the court be satisfied that there was no deception, and that the award was made, and validly, then the plea of the award and agreement to be bound by it, may be properly pleaded to the supplemental bill as it might have been to the original one.

3. Where in a pending suit a patentee and a party charged with infringing agree to refer the question of infringement to a third person as arbitrator, and to be bound by his award, this court will presume, until the contrary is shown, that an award made is correctly made; and must so presume if, disregarding the award, the complainant goes on with his suit, and the case on coming here, comes with a record that exhibits neither the patent of the complainant nor any description of the machine which is alleged to infringe it.

APPEAL from the Circuit Court for the Southern District of Ohio.

The Patent Act of 1870, thus enacts:

"SECTION 53. Whenever a patent is inoperative or invalid by reason of a *defective or insufficient specification*, or by reason of the patentee claiming as his own invention or discovery more than he had a *right to claim as new*; if the error has arisen by inadvertence ... the commissioner shall on the surrender of such patent, ... cause a new patent *for the same invention*, and in accordance with the corrected specification, to be issued to the patentee ... for the unexpired part of the original patent, *the surrender of which shall take effect upon the issue of the amended patent*. ... And the patent so reissued, together with the corrected specification, shall have the effect and operation in law on the trial of all causes thereafter arising, as though the same had been originally filed in such corrected form."

This court in construing similar language in the previous Patent Act of 1836, said:*

" A surrender of the patent to the commissioner ... means an act which in judgment of law extinguishes the patent. It is a legal cancellation of it, and hence can no more be the foundation for the assertion of a right after the surrender than could an act of Congress which has been repealed. ... The antecedent suits depend upon the patent existing at the time they were commenced, and unless it exists, and is in force at the time of trial and judgment, the suit fails."

In this state of the law this case arose. It was thus:

Reedy filed a bill, January 20th, 1871, in the court below,

---

\* Moffett *v.* Garr et al., 1 Black, 282.

the case being No. 1434, alleging the grant to him, as inventor, of letters-patent of the United States, No. 78,829, *dated the 9th of June*, 1868, for an improvement in hoisting machines; an " exemplified copy of which letters " the complainant alleged that he was ready to produce in court when required. No copy of any sort, however, was annexed to the bill.

The bill then averred that one Scott, without leave had, since the 9th of June, 1868, infringed the right of the complainant by making, using, and vending to others to be used, a number of machines—the exact number unknown—which "in principle and mode of operation " were the same as those described in the letters-patent.

The bill prayed for a subpœna, a discovery, an account, a preliminary injunction, and, upon the final hearing of the cause, for special and general relief.

A subpœna issued on the day of the filing of the bill, and was served.

On the 8th of March, 1871, the defendant having failed to answer, it was ordered that the bill should be taken as confessed.

On the next day this order was set aside, and the complainant had leave to file, and did file, a supplemental bill.

The supplemental bill related the substance of the original bill, and averred, " by way of supplement," that, since the filing of the original bill, the complainant had made a surrender of the letters-patent mentioned in it, dated June 9th, 1868, for the purpose of obtaining a reissue of the said letters upon an *amended specification*, drawings, &c. And that, on the 21st of February, 1871, such a reissue was granted by the Commissioner of Patents "*for the same invention;*" which letters reissued, No. 4273, were of record in the Patent Office. No copy of them was annexed.

It further averred that the defendant had without leave, and *since the date of the reissued letters-patent*, made, used, and sold to others to be used, machines which comprised the invention of the complainant as described and intended to be secured by the letters-patent *last mentioned*.

The bill prayed that the case which it stated be taken into consideration with reference to the prayer of the original bill; that the defendant be required to answer upon oath, as if interrogated specially, &c.

On the 9th of May, 1871, the defendant, by leave, pleaded to the supplemental as well as to the original bill of complaint.

The substance of the plea was, that on the 20th of January, 1871, after the filing of the bill, an agreement in writing was made by the parties, under their hands and seals, reciting that whereas the complainant was *the owner of letters-patent*, No. 78,829, for an improvement in hoisting machines, granted June 9th, 1868, and whereas the defendant was the owner of letters-patent, No. 81,299, for an improvement in elevators, dated August 18th, 1868, and was building hoisting machines which he set up a right to manufacture under said patent and a pending application, but which were asserted by the complainant to be an infringement of his letters-patent No. 78,829, and whereas the complainant had filed a bill in equity against Scott, the defendant, Case No. 1434, in the Circuit Court of the United States for the Southern District of Ohio, and whereas the parties were desirous of avoiding the expense and delay of litigation, it was thereby, between the complainant and the defendant, mutually agreed to submit to S. S. Fisher, Esq., the question whether the machine manufactured by the defendant was or was not an infringement of the letters-patent No. 78,829, and to abide by his decision of the said question; that is to say, if Fisher should decide the said machine to be an infringement, the defendant agreed to abandon the manufacture of said machines, and to make no more of them in any part of the United States; and if Fisher should decide that the said machine was not an infringement, then the complainant agreed that his bill in said suit No. 1434 should stand dismissed at his cost, and that he would not molest the defendant in the manufacture of said machines.

That the bill mentioned in the agreement was the original bill of complaint in this suit.

That, in pursuance of the agreement, the two parties personally appeared before the said Fisher, and submitted to him for his arbitration and decision the question and their respective claims in reference thereto, and their said patents; and that the parties having been fully heard by him, Fisher thereupon, afterward, to wit, on the 21st day of January, 1871, made and published his decision and award therein, wherein he found and decided, that the machine manufactured by the defendant *was not an infringement of the letters-patent No.* 78,829, granted to Reedy, June 9th, 1868; a copy of which decision, finding, and award was thereupon immediately by the said Fisher delivered to each of the parties.

Instead of demurring to this plea or tendering an issue to its allegations, the complainant had leave of the court to file, and did file, a *second* supplement to his original bill and an amendment to his first supplement. The substance of it all was, that the complainant, after the filing of his original bill, on the 20th of January, 1871, at the request and suggestion of the defendant, accompanied him (the defendant) to the office of Mr. Fisher, for the purpose of hearing the opinion of the said Fisher upon the question of infringement stated in the said bill; that, after a statement of the complainant's claims under his original patent, it was agreed between the parties to submit in writing the whole question of said infringement for the opinion of Fisher; that Fisher then drew an agreement in writing which the complainant and the defendant signed, but which the complainant did not understand as making the farther prosecution of this suit dependent on the opinion so to be given; that the complainant executed the agreement without consulting his solicitors, and without knowing its effect; that as soon as he became advised of the nature of the agreement and its possible effect, on the morning of the 21st day of January, 1871 (the agreement having been executed in the evening of the previous day), he went to the office of Fisher for the express purpose of revoking any and all authority given to him by the said agreement, but that Fisher was not in his office, and the complainant was informed that he would not

be in the city until late in the afternoon; that the complainant then took away from Fisher's office the original letters-patent, and did not return them; that in the afternoon of the said 21st day of January, 1871, and before the making or signing of the pretended award hereinafter mentioned, the complainant saw Fisher at his office and explained to him that he (the complainant) was mistaken as to the nature and effect of the agreement, and that he did not wish him, the said Fisher, to act thereunder, and, at the same time, served him, Fisher, with a written notice revoking all authority and power given to him by the agreement; that, notwithstanding such revocation and the withdrawal of the letters-patent, which were the only evidence of the complainant's invention before him, Fisher proceeded in the matter of said reference, and afterward made and delivered an opinion with respect to the infringement by the defendant of the first claim of the letters-patent, but did not give any opinion or make any award as to the second claim (for an infringement of which, as well as of the first, this suit was brought), and did not award, adjudge, or direct anything to be done by either of the parties; that the complainant did not receive notice of the sittings of the said pretended arbitrator, nor was any opportunity given him to call witnesses, or to be heard in person or by counsel; and that it did not appear that the machine of the defendant was before Fisher, or that any evidence respecting the same was offered or by the said Fisher required.

Prayer as in the bill and first supplement. Verification in due form.

June 14th, 1871, the defendant again pleaded, with an answer in support of his plea.

This plea and answer was, that it was not true that the complainant signed the agreement to submit not understanding the same to make the further prosecution of said suit dependent on the decision of Fisher; and, on the contrary, that the complainant signed the same with full knowledge and perfect understanding of the effect thereof, and, particularly, that the very purpose of signing the same was to put

an end to this suit. And that it was not true that the complainant revoked the authority of Fisher, given him by the said agreement, before Fisher had made and published said decision and award. Nor true that the complainant did not receive notice of the sittings of the arbitrator, and that no opportunity was given the complainant to call witnesses or to be heard in person or by counsel; but, on the contrary, that the complainant was personally present before the arbitrator at all his sittings, and had full opportunity to and did in fact produce and offer all evidence he considered material to his claim, and was fully heard thereon by said arbitrator.

Verification in due form, June 7th, 1871.

On the 12th October, 1872, a motion to strike out the plea and the answer, "for insufficiency," was overruled, and on the 6th March, 1873, an order for the taking of testimony made.

The testimony of Mr. Fisher was taken, and showed that the allegations of Reedy's so-called second supplement were not in their essential points true; and, on the contrary, that the pleas and answer of the defendant in such points were. It showed also that on the 21st of January, 1871, that is to say, one month before the reissue, Mr. Fisher had made an award thus:

"The question presented by the agreement of the parties to me for decision as referee, is whether the machine manufactured by Scott is or is not an infringement of the letters-patent No. 78,829, for an improvement in hoisting machines, granted to Reedy, June 9th, 1868.

"The patent embraces two claims, but the controversy as to infringement is, by agreement, limited to the first, which reads as follows:

"'The combination, substantially as described, with a hoisting platform of the suspending-rope, weights, rollers, sheaves, and shaft, or their mechanical equivalents, by which the platform is both balanced and enabled to be elevated and depressed in the manner explained.'

"The mechanism involved in this claim may be briefly described as follows: The platform of an ordinary hoisting ma-

chine is suspended in the bight of a long rope, about at mid-length of the latter. The two ends of the rope pass up, one on each side of the hatchway to a sheave, the two sheaves being secured to the same horizontal shaft, which is caused to rotate by gearing, after passing over the sheaves each end of the rope described, and is attached to a weight or counterpoise. At the point where the rope passes under the platform a small roller is located, one on each side, to prevent the abrasion of the rope as it is drawn backward or forward. The rope may be caused to move under the platform by irregularities in the load or by one sheave taking up the rope faster than the other; and the purpose of passing the rope below the platform and of making provision to prevent its abrasion is, that by using the rope in this way the platform is more perfectly balanced under all conditions. Hence, the claim describes the mechanism not only as raising and depressing the platform, but as 'balancing' it; and it is in the performance of this latter function that the rollers play their especial part.

"The machine of Scott shows a platform hung in the bight or loop of a rope which passes under a beam directly over the centre of the platform, with which it is connected by two side stanchions. The ends of the rope are taken up to two sheaves on the same horizontal shaft, over which they pass, descending over two idle pulleys on one side of the machine to a single weight, to which both ends are fastened. At the point at which the rope passes under the beam of the platform there is a grooved metallic saddle, which holds up the ends of two levers which operate the safety-brake; the rope passes in the groove around this saddle, and in fact suspends the saddle in the loop or bight.

"In my judgment, in so far as the function of elevating or depressing the platform by means of two ropes passing over two sheaves, and attached to weights is involved in Reedy's claim of invention, the same function is performed in substantially the same way by the mechanism in Scott's machine. But Reedy's claim is not for the mechanism for elevating and depressing the platform disconnected from that for balancing it. On the contrary, the mechanisms for performing the two functions are claimed in combination and not otherwise.

"It is well-settled law that a patent for a combination is not infringed unless all the parts of the combination are used by the alleged infringer. He must use every element enumerated

or must substitute a substantial equivalent for those omitted. The cases upon this subject are all one way.*

"After careful examination I do not think that Scott uses the rollers, or any equivalent for them. His rope does not pass under the platform. As the ends are not attached to separate weights, but to the same weight, there is no movement of the rope. It does not play any part in balancing the platform, which is simply suspended as from a single central point. He does not use a roller, but a grooved piece of metal; and while it is true that such a curved piece of metal, placed in the same . place as the roller, and aiding the rope in balancing the platform by diminishing the friction, would probably be an equivalent for the roller, yet I am clearly of opinion that, used as it is in Scott's organization, merely to inclose and sustain the ends of the brake-levers and performing no part in balancing the platform or in preventing the abrasion of the rope, it is not an equivalent of the rollers. It follows that Scott has omitted a material element of the combination patented to Reedy, and, consequently, has not infringed his patent.

"I therefore find, in answer to the questions submitted to me, that the machine manufactured by Scott is not an infringement of the letters-patent No. 78,829, for an improvement in hoisting machines, granted to Reedy, June 9th, 1868.

                                        "S. S. FISHER,
"January 21st, 1871.                    "Referee."

Mr. Fisher's cross-examination showed still further that after making this award Reedy consulted him professionally, and that he, Fisher, understanding the controversy with Scott to be terminated, advised the surrender and reissue of the patent, and that an application was made and reissue obtained through his (Mr. Fisher's) office, Mr. Fisher drawing the claims; and that he "advised Mr. Reedy that a reissue would cure the defect that had prevented him from covering Scott's machine, and secure to him what appeared to be his real invention."

The decree was thus:

---

* Prouty v. Ruggles, 16 Peters, 336; Vance v. Campbell, 1 Black, 427; Crompton v. Belknap Mills, 3 Fisher, 536.

"This cause came on for hearing upon the complainant's bill and supplemental bill and the plea of the defendant thereto, the bill of complaint by way of amendment and further supplement, and the plea of the defendant and answer in support of the same to the said bill, exhibits, and testimony, and was argued by counsel. And thereupon the court, being fully advised thereon, find that the plea is true and sufficient, and that the equity of the case is with the defendant. It is thereupon ordered, adjudged, and decreed that the bill and the supplemental bill and bill by way of amendment and further supplement thereto be and the same are hereby dismissed," &c.

The errors now assigned were—

1. That the court below held the plea of the defendant to be true and sufficient with respect to the matters alleged *in the supplemental bill.*

2. That it found the equity of the cause, with respect to the matters alleged *in the supplemental bill,* to be with the defendant.

*Mr. G. E. Pugh, for the appellant:*

1. The original bill related simply to the rights secured by the original patent; that is to say, patent No. 78,829, dated June 9th, 1868. Reedy, the complainant, alleged that Scott, the defendant, infringed *that* patent. Whether he infringed the reissued or *new* patent, that is to say, patent No. 4273, was not a question.

The reissued patent had not then any existence. It was in this state of things that whatever submission was made to Mr. Fisher was made.

Of course the complainant's rights under the reissue were not within the terms of the submission, and the opinion and award of Mr. Fisher have no reference to it. Indeed, it was only after the award and in consequence of it that a reissue was applied for. To construe an award on one matter existing and submitted, at one time, in such a manner as to make it apply to another matter which at the time was non-existent and not submitted, is plain error.*

---

* Hill *v.* Thorn, 2 Modern, 309.

The rights of Reedy under the reissued patent come in question only on the supplemental bill. For when the re-issue of the original patent took place, the original patent itself became null.* In point of fact it was surrendered and cancelled. The practice of the Patent Office requires that it should be. The original suit, and all questions and all proceedings under it, fell therefore to the ground.

The case, then, is on the supplemental bill. That bill first raised the question on the new patent, rights under which, as we have said, were never submitted to Mr. Fisher, and by any submission made at the date when the only one here set up was made, could not, in the nature of things, have been submitted. Yet the plea would seek to set up that by the arbitration and award Reedy's rights under the reissue were concluded. When the court below found that the plea of the defendant was sufficient with respect to mat-ter alleged in the *supplemental bill*, it surely made error.

It is no answer to say that the reissue is alleged to have been "for the same invention" as the original patent. Of course it was. But it was for the same invention particu-larly, properly, and validly set forth and described, and not for the invention generally, improperly, and invalidly set forth and described. And while, of course, the reissue could not lawfully include an invention beyond the scope of the original letters-patent, it does not follow that an omission to claim, with entire distinctness, what the tenor of the specifica-tion shows to have been the "real invention" of the patentee, and what it sufficiently appears he *intended* to claim, must be remediless forever. The very object of the statute in permit-ting letters-patent to be surrendered, and to be again issued, upon an amended specification, is to provide for such a case.†

At all events, the validity of the reissue ought to be de-termined upon a question *directly* made.‡

---

* Moffitt v. Garr et al., 1 Black, 282.

† Battin v. Taggert, 17 Howard, 74; Rubber Co. v. Goodyear, 9 Wallace, 788.

‡ Stimpson v. West Chester Railroad Co., 4 Howard, 380; Klein v. Rus-sell, 19 Wallace, 433, 434.

That the whole decision of Mr. Fisher rests on defect of a specification—a failure in Reedy to describe his invention with sufficient certainty—is shown by the fact that Mr. Fisher himself, after his award and in consequence of it procured the reïssue, he advising Mr. Reedy that a reissue would cure the defect that had prevented him from covering Scott's machine and secure to him what appeared to be his real invention. And that the difference between the claim in the original patent and the claim in the reissue was meant to be insisted on by us below, is shown by our cross-examination of Mr. Fisher, where it is brought out and made plain by us that that gentleman, when acting as arbitrator, must have rested his award upon a defective specification.

2. Mr. Fisher was to take the place of the judges of the Circuit Court as to the particular " question" submitted; and from his decision there was to be no appeal.

That has been accomplished. The letters-patent No. 78,829, have been surrendered; and every cause of action or complaint, *arising under them*, has been abandoned.

Nothing in the submission shows that Scott was to abandon his letters-patent No. 81,299, " for an improvement in elevators," dated August 18th, 1868, nor that he should " make no more" hoisting machines. But, only, that he should forbear to make *such* machines, without license, as embraced the invention of Reedy described in the " aforesaid" letters-patent.

*No opposing counsel.*

Mr. Justice CLIFFORD delivered the opinion of the court, and after stating the case and making some general remarks proceeded as follows:

The following assignment of errors is the assignment made:

1st. That the Circuit Court erred in holding that the plea of the respondent was true and sufficient with respect to the matters alleged in the supplemental bill.

2d. That the said court erred in finding that the equity of the case with respect to the matters set forth in the supplemental bill is with the respondent.

In the case before us all necessity for any discussion of the charges contained in the original bill of complaint is superseded, as the assignment of errors does not impugn in that respect or call in question the correctness of the decision or decree of the Circuit Court. Such an assignment of errors, if it had been filed, would have been utterly unavailing, for the reason that the surrender of a patent to the commissioner within the sense of the provision, means an act which, in judgment of law, extinguishes the patent. It is a legal cancellation of it, and hence the patent can no more be the foundation for the assertion of a right, after the surrender, than could an act of Congress which has been repealed, and it has frequently been determined that suits pending which rest upon an act of Congress fall with the repeal of it. Antecedent suits depend upon the patent existing at the time they were commenced, and unless it exists and is in force at the time of the trial and judgment, the suits fail.*

Where the patent expires and is extended pending the litigation, and the infringement by the respondent is continued in respect to the extended patent, a supplemental bill is a proper pleading to prolong the suit, as in that state of the case the complainant may well claim, if he is the original and first inventor of the improvement, to recover of the respondent the gains and profits made by the infringement, both before and subsequent to the extension, but the rule is otherwise where the original patent is surrendered, as the effect of the surrender is to extinguish the patent, and hence it can no more be the foundation for the assertion of a right than can a legislative act which has been repealed without any saving clause of pending actions. Consequently the infringement of the reissued patent becomes a new cause

---

* Moffitt *v.* Garr, 1 Black, 273; Curtis on Patents, §§ 399, 342.

of action for which, in the absence of any agreement or im-
plied acquiescence of the respondent, no remedy can be had
except by the commencement of a new suit.

Instances, however, may be found where in such a case
the complainant sought his remedy in a supplemental bill,
no objection having been made by the respondent, and such
examples induce the court to disregard the irregularity in
this case, inasmuch as neither the respondent or the court
below appear to have regarded it as a matter of any import-
ance.    Instead of that the complainant was permitted to file
his supplemental bill charging infringement as in case of an
extended patent, and the respondent making no objection
to the regularity of the bill, refiled the plea which he filed
to the original bill of complaint, accompanied with a general
denial of every material allegation contained in the sup-
plemental bill, as subsequently amended by leave of the
court.    Subsequently the proofs exhibited were taken, and
the parties having been heard the court entered the afore-
said decree deciding the whole case, as more fully set forth
on the record.    None of the proofs were taken before the
reissued patent was granted, nor until after the supplemental
pleadings were completed.

These suggestions are sufficient to show that every irregu-
larity, whether on the one side or the other, was waived be-
fore the decree of the Circuit Court was entered, and that
both parties understood that the question submitted to the
arbitrator was whether the machine manufactured by the
respondent infringed the improvement invented by the com-
plainant.    Conclusive support to that proposition is found
in the fact that both parties proceeded, throughout the trial
in the Circuit Court, upon the legal ground that the reissued
patent was for the same invention as that embodied in the
original patent.

Reissued patents are required by law to be for the same
invention as that secured by the surrendered patent, and
the complainant expressly alleges in this case that his re-
issued patent is for the same invention as the surrendered
original.    Nor can the court take any other view of the

case, as neither the original nor the reissued patent is made a part of the record. Clear proof is exhibited that the agreement to arbitrate and the submission in form were both executed before the original patent was surrendered, and that the submission had been signed and delivered before the complainant made any effort to revoke the instrument.

Sufficient has already appeared to show that the arbitrator examined the question submitted to him, and made an award that the machine manufactured by the respondent did not infringe the invention secured to the complainant in his original patent, and that he gave his reasons for the conclusion, which appear to be satisfactory as far as can be ascertained without the means of comparing the patent of the complainant with the machine of the respondent. Such a comparison cannot be made without such means, nor can the court look out of the record for means to make the comparison.

Attempt is made to avoid the force and effect of the award of the arbitrator, upon the ground that the complainant was misled in signing the agreement and that he was deprived of the opportunity to summon witnesses and to be heard in person or by counsel, but it will be sufficient to say in response to those suggestions that the proofs exhibited do not satisfactorily sustain the charges. On the contrary, enough appears to convince the court that the agreement is obligatory and that the complainant is bound to execute the agreement and to dismiss his bill of complaint and not to molest the respondent in the manufacture of his machine.

Substantial doubt cannot be entertained that the rule of decision adopted by the arbitrator is correct if he properly construed the patents. He found that the patent of the complainant was a combination of old ingredients, and that the machine manufactured by the respondent did not contain all of the ingredients embodied in the combination patented by the complainant. Nothing is exhibited in the record to show that the arbitrator erred in the construction of the patent, and if he did not, and his finding as to the

character of the machine manufactured by the respondent is correct, it is settled law that his decision is correct.*

Arbitrators as well as courts are presumed to decide correctly until the contrary appears, and if the party desires that the decision of such a tribunal shall be re-examined by an appellate court he must see that the means for such a review is embodied in the record. Neither the patent of the complainant nor any authentic description of the machine manufactured by the respondent is contained in the record, and in the absence of such it must be presumed that the arbitrator construed the patent correctly, and that his finding in respect to the construction and mode of operation of the machine manufactured by the respondent is also correct.

Judging from the character of the assignment of errors it is presumed that none of these views as applied to the matters alleged in the original bill are controverted, and the court here is of the opinion, in view of the previous explanations, that they are equally applicable to the matters alleged in the supplemental bill, for several reasons:

1st. Because the agreement to arbitrate and the submission in form were duly executed before the original patent was surrendered.

2d. Because the arbitrator proceeded to examine and to decide the question submitted without any objection from either party growing out of the surrender or reissue.

3d. Because the subsequent pleadings and proceedings in the suit show that the surrender and reissue did not have the effect to change the substantial issue in the litigation.

4th. Because the complainant alleged in his supplemental bill that the reissued patent was for the same invention as that embodied in the original.

5th. Because the agreement to dismiss the bill of complaint, if executed by a proper decree, must include all the subsequent appendages to it and would be of itself a decision adverse to the complainant.          DECREE AFFIRMED.

---

* Gill *v.* Wells, 22 Wallace, 1; Gould *v.* Rees, 15 Id. 194; Vance *v.* Campbell, 1 Black, 428; Prouty *v.* Ruggles, 16 Peters, 341; Carver *v.* Hyde, Ib. 514; Brooks *v.* Fiske, 15 Howard, 212; Stimpson *v.* Railroad, 10 Id. 329.