# LATTIG *v.* DEAN.

---

PATENTS; INTERFERENCES; REISSUED PATENTS; APPEAL AND ERROR.

1. An interference is a judicial proceeding carried on in the Patent Office, for the purpose of determining the question of priority between two or more parties, each of whom is seeking a patent for the same invention; or between two or more parties, at least one of whom is seeking a patent for an invention already covered by a patent which has not yet expired.

2. Interferences are declared between applications rather than applicants, and are intended to disclose and determine which invention was first produced, not who has the title.

3. In the sense of the patent law, there can be no interference unless there is a patentable invention, and there are rival claimants of it. (Following *Oliver* v. *Felbel,* 20 App. D. C. 262.)

4. A reissued patent takes the place of the surrendered patent, and is a new grant for the unexpired part of the term of the original patent, which, from the time when its surrender takes effect, is extinguished and legally dead. No rights can be predicated upon it; all pending suits brought upon it fall; no judgment of any nature can thereafter be based upon it.

5. Where, pending an interference between an application and a patent, the patentee applies for a reissue of his patent, omitting from his application the claims involved in the interference, and the reissue is allowed, the surrender of the original patent takes effect upon the reissue, and is a legal cancelation and extinguishment of it; and a subsequent award of priority by the Examiner of Interferences, and its affirmation by the Examiners-in-Chief and Commissioner, are void; there being but one party left to the interference after the extinguishment of the original

patent; and the proper course, under such circumstances, is for the patentee to move for the dissolution of the interference.

6. Upon an appeal by the patentee, under such circumstances, from the decision of the Commissioner awarding priority to the applicant, as any judgment of priority of invention by this court would be equally void, the appeal will be dismissed, and the case remanded to the Patent Office to be dealt with as law and justice may require.

7. A proper construction of rule 125 of the Patent Office does not prevent a dissolution of an interference between a patent and an application, where, pending the interference, an application by the patentee for a reissue of his patent is allowed, and a reissue patent granted.

No. 298.  Patent Appeals.  Submitted May 9, 1905.  Decided May 23, 1905.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.  *Appeal dismissed.*

The facts are sufficiently stated in the opinion.

*Mr. Edward E. Clement* and *Mr. E. F. Colladay* for the appellants.

*Mr. H. A. Seymour, Mr. Robert Lewis Ames, Mr. W. Clyde Jones,* and *Mr. Keene H. Addington* for the appellee.

Mr. Justice DUELL delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of Patents awarding priority of invention to William W. Dean.  The record discloses facts which take the case outside the lines of interferences which we are usually called upon to investigate and determine.  There are no disputed questions of fact, but the question raised is one of law, and that an interesting one.  Dean, the appellee, provoked the interference by making certain claims contained in a patent issued to the appellants Jacob W. Lattig and Charles L. Goodrum while his, Dean's, application was pending.  His request that an interference be declared was at first refused by the Examiner upon the ground that the claims

from Lattig and Goodrum's patent were not readable upon the drawings of his application in the same sense that they were readable upon the patentee's drawings, or, in other words, that Dean had no right to make the claims. The Examiner later receded from this position, and the interference was declared. It is admitted that this interference was suspended for the purpose of adding a new party. At the time of such suspension the preliminary statements, if any, had not been opened, and, of course, no testimony had been taken. Pending the suspension, Lattig and Goodrum filed an application for a reissue of their patent, omitting therefrom the claims involved in the interference. The reissue was allowed and patent known as Reissued Letters Patent No. 12,156 was issued September 8, 1903. The surrender of the original patent which was involved in the interference took effect upon such issue. Rev. Stat. § 4916, U. S. Comp. Stat. 1901, p. 3393. Such surrender was an act which, in judgment of law, was a legal cancelation of it, and effectually extinguished it. *Reedy* v. *Scott,* 23 Wall. 352, 23 L. ed. 109.

Notwithstanding this, on September 10, 1903, two days later, the Examiner of Interferences, without any notice to the parties, and without any formal vacation of the suspension order, so far as the record discloses, and with full knowledge of the issue of the reissue patent, as shown by his decision, made an order to the effect that, "judgment of priority is hereby rendered to the effect that Jacob W. Lattig and Charles L. Goodrum are not the first inventors of the subject-matter covered by the counts of this interference." The authority for this action he found in Rule 125 of the Patent Office, which will later be referred to.

Thereupon, Lattig and Goodrum moved that the interference be dissolved for the reason that no interference existed. The primary Examiner granted the motion, and from this ruling an appeal was taken by Dean to the Commissioner in person. The latter held that the Examiner erred, overruling the ground upon which the Examiner based his decision, which was that there was

at that time only one party making the claims, and consequently there was no interference in fact.

Lattig and Goodrum, for the purpose of preserving their rights, concurrently with their motion for a dissolution of the interference, filed an appeal to the Examiners-in-Chief from the decision of the Examiner of Interferences holding that they were not the prior inventors of the subject-matter of the interference. In passing, it may be said that this ruling of the Examiner of Interferences has been treated by the appellate tribunal of the Patent Office as an award of priority in favor of Dean. The wording of the finding is not that ordinarily followed in awarding priority upon the record dates, and, at the best, it seems to us to be in effect only a judgment against Lattig and Goodrum, and intended only to confirm that which they had admitted by their surrender of their original patent. It is, however, of no moment how it be considered, for the question still remains whether the Examiner of Interferences had at the time any power to enter any judgment for or against either of the parties,—whether he could then do more than dissolve the interference.

The Examiners-in-Chief, upon consideration of the appeal, in a well-reasoned opinion, held that they had no jurisdiction to decide the question of priority because the unexpired patent had been legally extinguished, saying: "There is thus lacking in the proceedings before us one of the parties required by the statute and the rules to be present before a valid interference can exist. The appeal is accordingly dismissed."

Upon the rendition of this decision, Lattig and Goodrum petitioned the Commissioner to remand the interference to the Examiner of Interferences with instructions to dissolve the interference and vacate the judgment entered by him. If the Examiners-in-Chief were correct in their decision that neither they, nor the Examiner of Interferences, had jurisdiction to decide the question of priority, this was a proper motion. The Commissioner denied the petition, holding that, in view of Rule 125, the Examiner of Interferences had jurisdiction at the time when he rendered the judgment against Lattig and Goodrum. In view

of this decision, the Examiners-in-Chief took jurisdiction, and, construing the judgment of the Examiner of Interferences as a decision in favor of Dean, affirmed it. An appeal was taken to the Commissioner in person, who affirmed the Examiners-in-Chief. Upon such a state of facts, the appeal is before us.

We are so clearly of the opinion that the Examiner of Interferences was without jurisdiction to render any judgment, for or against either party to the interference, in view of the fact that the Patent Office had ousted itself of any such jurisdiction by extinguishing the original patent involved in the interference, as it did when it issued the amended patent, that we would be justified in simply dismissing the appeal. We are, equally with the various tribunals of the Patent Office, without legal authority to render any judgment for the relief of either party. We certainly cannot grant any affirmative relief to the appellants, for their patent originally involved in the interference has been canceled. We can, however, with propriety give our reasons upon which the dismissal must be based.

The statutes provide that interferences may be declared between pending applications, or between pending applications and unexpired patents. In the case at bar the interference was declared between a pending application and an unexpired patent. Walker defines an interference as "a [judicial] proceeding carried on in the Patent Office, for the purpose of determining the question of priority between two or more parties, each of which is seeking a patent for the same invention; or between two or more parties, at least one of which is seeking a patent for an invention already covered by a patent which has not yet expired." Walker, Patents, § 140. Robinson gives a like definition. He says: "An interference is a proceeding instituted for the purpose of determining the priority of the inventive act between two or more parties who claim substantially the same patentable invention." 2 Robinson, Patents, § 587.

It has been uniformly, and we believe correctly, held by the Patent Office that interferences are declared between *applications* rather than *applicants,* and that they are intended to disclose and

determine which *invention* was first produced, not who has the title. *Hicks* v. *Keating,* 40 Off. Gaz. 343.

We said in *Oliver* v. *Felbel,* 20 App. D. C. 262: "In the sense of the patent law, there can be no interference unless there is patentable invention and there are rival claimants of it." Both of these conditions are prerequisites to an interference, and, either failing, it would seem to logically follow that the interference falls. How can there be a judgment of priority where there are not rival claimants? The Patent Office permitted one of the parties to this interference to withdraw by accepting a surrender of the unexpired patent, and, having done so, is in no position to assert a right to adjudge priority. We are not concerned with the question of the propriety of the act of the Patent Office in issuing a reissue patent, pending the suspension of the interference, to one of the parties to it. We can only deal with the fact that it has done so.

The statutes also provide that an unexpired patent may be surrendered and a new patent issued in place thereof. Prior to the patent act of 1870, the surrender took effect upon the filing of the application for a reissue thereof, but since that date the surrender is of the date of the issue of the reissued or amended patent. What is the effect of a surrender of the original patent? Upon the plain reading of the statute (§ 4916, U. S. Comp. Stat. 1901, p. 3393) it is plain and self-evident that the surrendered patent is extinguished. It is canceled. The reissued patent takes its place, but it is a new grant for the unexpired part of the term of the original patent, which latter is, from the time when its surrender takes effect, legally dead. No rights can be predicated upon it. All pending suits brought upon it fall. No judgment of any nature can thereafter be based upon it.

In *Moffit* v. *Garr,* 1 Black, 273, 17 L. ed. 207, in which was involved the effect of a surrender of a patent upon a pending suit instituted before the surrender, the court, at page 283, page 208, 17 L. ed., says, that a surrender of a patent "means an act which, in judgment of law, extinguishes the patent. It is a legal cancelation of it, and, hence, can no more be the founda-

tion for the assertion of a right after the surrender than could an act of Congress which has been repealed. It has frequently been determined that suits pending, which rest upon an act of Congress, fall with the repeal of it. The reissue of the patent has no connection with, or bearing upon, antecedent suits; it has as to subsequent suits. The antecedent suits depend upon the patent existing at the time they were commenced, and, unless it exists and is in force at the time of trial and judgment, the suits fail."

Again, in *Reedy* v. *Scott,* 23 Wall. 352, 23 L. ed. 109, the Supreme Court reiterated the principle, and quoted in support of its position the statement last quoted.

In *Meyer* v. *Pritchard,* 131 U. S. ccix. Appx. and 23 L. ed. 961, which was a case where the patent, upon which the suit was founded, had been surrendered and reissued by the appellants after the appeal had been taken, the court said: "Since the appeal in this case, the appellants, who represent the original patentees, have surrendered the patent upon which the suit was brought, and obtained a reissue. The fact is conceded. If we should hear the case and reverse the decree below, we could not decree affirmative relief to the appellants, who were the complainants below, because the patent upon which their rights depend has been canceled." The appeal was dismissed, and the case remanded to the court below to be dealt with as law and justice required, upon the ground that "there is no longer any 'real or substantial controversy between those who appear as parties to the suit' upon the issues which have been joined."

In *Peck* v. *Collins,* 103 U. S. 660, 26 L. ed. 512, which was a suit brought to recover a balance due for the purchase price of an interest in a patent, which later had been surrendered for reissue, the court held that no recovery could be had because the patent had been extinguished by its surrender for reissue. See also *Allen* v. *Culp,* 166 U. S. 501, 41 L. ed. 1093, 17 Sup. Ct. Rep. 644.

The courts have even gone so far as to hold that a suit cannot be maintained for infringement of a patent while an application

for its reissue is pending and undetermined. *Burrell* v. *Hackley,* 35 Fed. 833; *Palmer Pneumatic Tire Co.* v. *Lozier,* 69 Fed. 346.

In the light of the statutes and authorities, it would seem that no judgment of priority for or against any party to an interference can be lawfully made where one of the parties has failed by reason of the extinguishment of the patent involved in the interference through its surrender and reissue. That at least two parties to an interference are requisite is clearly stated by the statute (§ 4904, U. S. Comp. Stat. 1901, p. 3389). Equally true is it that upon the issue of the reissued patent the original patent is surrendered. § 4916, U. S. Comp. Stat. 1901, p. 3393. Furthermore, no room is left for argument as to what is the effect of the surrender of the patent and the effect upon pending legal proceedings. The Supreme Court has said that its surrender is "a legal cancelation of it, and effectually extinguishes it;" that when so canceled it cannot "be the foundation of the assertion of a right after the surrender." Changing the word "suits," employed in *Moffitt* v. *Garr,* 1 Black, 273, 17 L. ed. 207, for the narrower term "interferences," the reading would be: "The antecedent interferences depend upon the patent existing at the time they were commenced, and, unless it exists and is in force at the time of trial and judgment, the interferences fail."

The Patent Office, in asserting authority to award judgment after the cancelation of the patent involved in the interference, and at a time when, had the proceeding been pending in the courts, the only order that could or would have been made would have been an order for the dissolution of the interference, relies upon Patent Office Rule 125, which reads:

"After the interference is finally declared, it will not, except as herein otherwise provided, be determined without judgment of priority founded either upon the testimony, or upon a written concession of priority by one of the parties, signed by the inventor himself (and by the assignee, if any), or upon a written declaration of abandonment of the invention."

The Commissioner of Patents is given authority to establish

regulations for the conduct of proceedings in the Patent Office, subject to the approval of the Secretary of the Interior, and not inconsistent with law. Such rules must not be in conflict with the statutes as construed by the courts. The quoted rule does not warrant the claimed jurisdiction. If it be construed so broadly as to justify the entry of a judgment of priority for or against either party to an interference, after the patent involved in the interference is extinguished by its surrender, cancelation, and reissue, and at a time when there is but one party left to the interference, then the rule is inconsistent with law, which provides that there must be two or more parties to an interference, and which holds that no judgment can be entered based upon a surrendered patent, and is void. We prefer, however, to consider that a fair interpretation of the rule does not, and is not intended to, prevent a dissolution of an interference without an award of priority, under the unusual conditions presented by the facts in the case at bar. The Patent Office has often placed the narrower construction upon the rule as evidenced by dissolving interferences without a judgment of priority and outside the special limitations of the rule. It is unnecessary to enumerate the cases in which this has been done.

In *Bender* v. *Hoffman,* C. D. 1898, p. 262 [85 Off. Gaz. 1737] it was said by the Commissioner:

"The discretionary power of the Commissioner of Patents will be exercised whenever he thinks good practice and equity require it, and he has exercised it to the extent of dissolving interferences without passing upon the question of priority, even where cases have come before him on appeal from the Examiners-in-Chief after an award of priority, where they failed to call his attention to such matters as are provided for by Rule 126."

In our opinion, the action of the Examiner of Interferences in awarding priority against Lattig and Goodrum after the surrender and cancelation of their patent was irregular and void, and the judgment should be vacated. The judgment of priority awarded by the Examiners-in-Chief in favor of Dean, and its affirmation by the Commissioner, were and are equally void.

If it becomes apparent during the course of an interference that its further prosecution would be useless, the proper course would seem to be the one adopted by the appellants: That is to move for its dissolution; and thereupon the papers should be transmitted by the Examiner of Interferences to the primary examiner for his decision.

Any judgment of priority of invention that we might render would be equally void, and our only course is to follow the precedent set by the Supreme Court in *Meyer* v. *Pritchard,* 131 U. S. ccix. Appx. and 23 L. ed. 961, dismiss the appeal, and remand the case to the Patent Office to be dealt with as law and justice may require.

The appeal is therefore dismissed.

The opinion and the proceeding in the cause in this court will be certified to the Commissioner for record in his office according to law. *Appeal dismissed.*