66 U.S. 273
 1 Black 273
 17 L.Ed. 207
 MOFFITT
v.
GARR ET AL.
 December Term, 1861
 
 Error to the Circuit Court of the United States for the southern district of Ohio.
 The plaintiff in error, who was also plaintiff below, filed a declaration in case against defendants in error, for the infringement of letters patent of the United States, granted to him November 30, 1852, for an improvement in grain separators. This declaration was filed March 22d, 1859. On the 25th of October following, one of the defendants filed the following plea: 'And now comes the said John M. Garr and says that the said John R. Moffitt ought not further to maintain this action against him; because, he says, that since the commencement thereof and before the 17th day of May, 1859, to wit, on the ___ day of _____, the said John R. Moffitt surrendered to the United States the patent before that time issued to him, and for the alleged infringement of which this suit is brought, and this he is ready to verify. Wherefore,' etc. To this plea the plaintiff demurred, and the court overruled the demurrer. Judgment for defendant. The plaintiff took this writ of error.
 Mr. Lee and Mr. Fisher, of Ohio, for plaintiff in error There may be a surrender of letters patent which is not made for the purpose of reissue under the 13th section of the act of July 4, 1836. The plea does not aver that the plaintiff's patent was surrendered under, or by virtue of, the 13th section of the patent act; nor does it aver that it was surrendered for the purpose of obtaining a reissue; or that it was surrendered because of a defective or insufficient description or specification; or because the claim was too broad; or because the patent was from any cause void or voidable; nor even that the patent was cancelled.
 The question of the right of a patentee to surrender his patent, before the act of 1836, and independently of any statute authorizing him to do so, was fully considered in the discussion of the case of Grant vs. Raymond, (6 Peters, 218;) but neither the court, nor either of the distinguished counsel, seemed to doubt, for a moment, that he possessed such power. Batten vs. Taggart, (17 How., 74.) If the right to make such a surrender exists independently of any statute, the making of the surrender does not imply or involve any statutory or other defect in the patent. And where a patent has been so surrendered or abandoned, an action may still be maintained for infringements committed before the surrender or abandonment. If the patentee surrenders his patent as the end of six years, it is the same as if it had been originally granted to him for six years, and that, for violations of his exclusive privileges committed during those six years, his remedy is as complete as if the patent had stood to the end of his term. It would seem as if this proposition did not admit of doubt or argument. If the surrender of the patent vacates it from the first, then the patentee has been a trespasser from the beginning. He may have been the first and original inventor of a useful improvement; his patent may have been regularly issued; it may have been tested and declared valid in the courts of last resort; and his right to enjoy his monopoly to the end of the full term may have been indisputable. Yet, if he surrenders the latter half of that monopoly to the people, he renders the first half void. He ought to be compelled to refund every penny he had received as patentee, whether peaceably or by the judgment of a competent tribunal. This would be monstrous. But, if he has any rights under the first half of the grant, he is entitled to full rights. If he is entitled to keep the pay received from those who have used and paid, he is also entitled to demand and recover his pay from those who have used and not paid. He might have brought and maintained such an action before the surrender. Why not as well afterward, when suits may be brought any time within six years after the expiration of a patent for infringements committed before? The right of the patentee, we insist, is not divisible. That portion of it which is in possession is no more legal than that which remains in action.
 The application of these principles to the present case is obvious.
 The plea avers a simple surrender of the patent, made two months after an action had been actually brought to recover damages for a previous infringement. It does not aver cancellation or reissue. The court, by overruling the demurrer, held such a plea to be a bar to such an action. We think the error obvious, upon the principles above set forth.
 But if this surrender were, in fact, made under the authority of the 13th section of the act of July 4, 1836, and only by virtue of that section, then we maintain: A surrender of a patent for correction and reissue, by virtue of the statute, does not render the patent void ab initio. If the patentee still chooses to risk a suit upon the original patent, he may recover upon it for infringements committed before it was surrendered. In support of this proposition we submit the considerations just urged. If the patent is vacated from its issue, then every exercise of exclusive ownership has been illegal. If not, then infringers ought, at least, to be compelled to pay that whicn honest men have been willing to give the patentee.
 This court has, as it seems to us, expressly refused to affirm the English doctrine, that a surrender and reissue vacated the original patent. Shaw vs. Cooper, (7 Pet., 314;) Grant vs. Raymond, (6 Pet., 220.) See also Ames vs. Howard, (1 Sumner, 488;) Stanley vs. Whipple, (2 McLean, 37;) Woodworth vs. Stone, (3 Story, 753, 754;) Woodworth vs. Hall, (1 Wood & Minot, 257;) Eastman vs. Bodfish, (1 Story, 529.)
 But, again: It is urged, and as the main objection, that, by the very act of surrender, under the statute, the patentee admits that his original patent is void, and, therefore, he is estopped from asserting its validity in a suit for its infringement.
 To this we answer, that he makes no such admission, even by the act of statutory surrender.
 The 13th section provides, 'that whenever any patent which has heretofore been granted, or which shall hereafter be granted, shall be inoperative or invalid by reason of a defective or insufficient description or specification, or by reason of the patentee claiming in his specification more than he had or shall have a right to claim as new, if the error, &c.'
 A patent, then, may be reissued, if it be—1st, inoperative; or, 2d, invalid. Looking to what follows, the word 'inoperative' manifestly refers to the defective specification, and the word 'invalid' to the claim of 'too much,' which, under the act of 1836, rendered the patent absolutely void.
 A patent 'inoperative' because of a 'defective or insufficient' specification is not necessarily void. The specification may not describe the invention as clearly as might be desired, or so comprehensively as to cover a particular evasion of the patent, or it may fall short of describing the whole of the invention, illustrated by the model and drawings. In such case, this court (Batten vs. Taggart, 17 How., 84) held that the patentee had a right 'to restrict or enlarge his claim, so as to give it validity and to effectuate his invention.'But an enlargement of the claims is a claim for something more; and if such a claim be valid, the original claim must be valid also, for 'the greater includes the less.'
 The history of the litigation upon patents shows that many patents have been surrendered and reissued after they had been the subject of fierce controversy, and had repeatedly been declared valid by the courts of the United States. The validity of the famous Woodworth patent had been established in Massachusetts and Ohio. See Brooks vs. Bickwell, (3 McLean, 250;) Washburn vs. Gould, (3 Story, 122;) Woodworth vs. Sherman, (3 Story, 171.) And yet the patent was afterwards reissued. Woodworth vs. Stone, (3 Story, 751;) Woodworth vs. Edwards, (3 Wood & Minot, 136 et seq.)
 So also with the Howe Sewing Machine patent.
 The plea having averred surrender only, but not cancellation, the court could not know judicially but that the original patent was still in existence. The acts of surrender and cancellation are distinct, and are so recognised by the court in the case of Batten vs. Taggart, (17 How., 80.)
 Mr. Stanbery, of Ohio, for defendant in error. I will consider, in their order, the grounds for reversal relied on by the plaintiff.
 1. 'That there may be a surrender of letters patent, which is not made for the purpose of reissue, under the 13th section of the act of July 1, 1836.'
 It does not seem of any moment to consider whether there may not be a surrender, under that 13th section, without a reissue; for if such surrender is allowable, as the plaintiff alleges, still it is a surrender under that section; and the question remains, as to the effect of the surrender.
 The plaintiff argues, that there may be a surrender independently of the statute, and that such a surrender would not nenessarily imply that the patent was invalid. In support of this position, Grant vs. Raymond (6 Peters, 218) is cited.
 No such question arose in that case, for the surrender in that case was in virtue of the statute then in force. The real question was as to the new patent issued after the surrender; for the statute then in force only provided for a surrender, and did not expressly authorize the reissue.
 I find it difficult to understand what the plaintiff means by a surrender of a patent, independent of the statute. A patentee may, herhaps, (though it is by no means clear,) destroy his patent by cancellation. That is his own act; but he cannot surrender his patent to himself. The act implies a party capable of receiving the surrender.
 Now, what is alleged in our plea is a surrender to the United States—that is, to the party from which the grant emanated. This sort of surrender is authorized by law, and it is the only sort of surrender contemplated by the statute. We have, therefore, under this plea, nothing to do with any other surrender than that authorized by the statute.
 It is further claimed by the plaintiff, that 'a surrender, under the 13th section, does not render the patent void ab initio. If the patentee chooses to risk a suit upon the original patent, he may recover upon it for infringements committed before it was surrendered.'
 I do not consider it necessary to go into the inquiry whether, for all purposes and in all aspects, the original patent, after its surrender, is to be considered as void from its inception. We are only concerned, in this case, as to the operation or effect of the original patent as a cause of action, or a continuing cause of action after the surrender. We do not aver that, at the commencement of the suit, the plaintiff's patent was void; but we merely say, that, after the suit was brought; the plaintiff surrendered his patent. This the plaintiff admits. What, then, is the effect of a surrender upon an action pending at the time of the surrender?
 The surrender is to be allowed when the patent 'shall be inoperative or invalid by reason of a defective or insufficient description or specification, or by reason of the patentee claiming in his specification, as his own invention, more than he had, or shall have, a right to claim as new.'
 These are the conditions on which alone, according to the statute, the surrender is authorized. When, therefore, the patentee avails himself of this permission, he must be taken to admit that his patent is inoperative or invalid, at least until there is some averment to the contrary.
 But further, the act of surrender extinguishes the right of action so far as the old patent is concerned, for there is no reservation of any right, either for prior or subsequent infringements, or for actions pending, to be asserted upon the old patent after the surrender. The only right saved is under a reissue, and in virtue of the new patent, and this new right is confined by the express terms of the statute to 'actions hereafter commenced for causes subsequently accruing.' In the case at bar, the plaintiff counts upon a cause of action which accrued prior to the surrender; but the only rights which survive the surrender, survive alone by virtue of the new patent. Consequently, if the new patent does not sustain the pending action, the old one cannot have that effect.
 In the case of Woodworth vs. Stone, (3 Story's Rep., 749,) a question arose upon the effect of a surrender and reissue pendente lite. The case was upon a bill for an injunction. Judge Story held that the case might proceed, notwithstanding the surrender or reissue, to prevent future and threatened infringements, and carefully distinguishes such a suit from an action at law, which only regards the past.
 I do not find that the precise question now under consideration has been decided by this court. In Stimpson vs. Westchester R. R., (4 How., 402), the court say: 'The charge of infringement in the declaration is laid some years after the new patent, so that the question does not arise whether an action could be sustained for a violation of the right prior to the corrected patent.'
 The case from which the above quotation was made arose under the 3d section of the act of 1832, which first provided for a reissue. It will be found that it did not contain the provision contained in the 13th section of the act of 1836, confining the new patent to 'causes subsequently accruing,' and it would seem that this provision was added to settle any question which might arise upon the act of 1832.
 In the case of Batten vs. Taylor, (17 How., 74,) the court came very near to a decision of this question, for it is said: 'The plaintiff, by a surrender of that patent and the procurement of the patent of 1849 with the amended specifications, abandoned the first patent, and relied wholly on the one reissued.'
 Mr. Curtis, in his Treatise on Patents, (sec. 255,) seems to take it for granted, that, after the surrender, the infringement must be subsequent.
 See also Ames vs. Howard, (1 Sumner, 482, 488.)
 The counsel for the plaintiff cite the case of Eastman vs. Bodfish, (1 Story, 529.) That case has no relation to a surrender. It was a suit upon an extended patent, and simply decides that, as the time laid for the infringement fell within the time of extension, the plaintiff could not rely upon an infringement prior to the extension, but must be confined to the time laid in the declaration. Nor does the case decide that if the time had been laid prior to the extension the plaintiff might have recovered. However that may be, a patent extended is quite another thing from a patent surrendered.
 I find only one case in the English books which has any relation to the case at bar—Perry vs. Skinner, (Webster's Patent Reports, 350.) That case was upon a disclaimer, under a statute which made the amended specification part of the original patent; and the reporter adds this note at the close of the case:
 'The result of the above decision would appear to be that the party entitled to letters patent in the title or specification, of which any disclaimer or memorandum of alteration has been enrolled, has no remedy at law in respect of an infringement prior to the date of the enrolment of such disclaimer or memorandum of alteration, but from the date of such enrolment the patentee acquires a new title.'
 If this is the consequence of a disclaimer, which becomes part of the old patent, how can there be a doubt that the same consequence results from a surrender and reissue? If the disclaimer works a new title by implication, the surrender and reissue do the same thing expressly.
 In England the surrender of a patent works a total extinction of the grant for all purposes. I do not claim such an effect from our statutory surrender, except as to infringements prior to the surrender.
 It is very certain that, from the date of the surrender and reissue, there is only one patent in esse, for there cannot be two patents for the same invention existing at the same time. Whatever rights survive the surrender must be asserted under the reissued patent, which, for some purposes, has relation to the original grant. The idea suggested by the plaintiff's counsel, that, after the original patent has been surrendered, that patent may be used as the foundation for an action, or introduced in proof as a valid title, seems to me wholly inadmissible.
 The plaintiff also claims that the plea is bad, because it does not aver a cancellation of the surrendered patent, and cites 17 How., 80. The case warrants no such conclusion. There is nothing in the statute about cancellation, and this word, whenever used by this court, is used as an equivalent term for surrender. In England no surrender can be made without a record, and perhaps a cancellation; but there a surrender works a total relinquishment of the grant, and as the Crown cannot receive such a relinquishment without a record, this ceremony is necessary. Hindmarsh on Patents, 246.
 In conclusion, I beg to call the attention of the court to the following facts shown by the record: The original patent was granted to the plaintiff on the 30th November, 1852. This patent was surrendered on the 23d March, 1858, as is alleged in the declaration, 'in consequence of an insufficient and defective description and specification of said invention; and such proceedings were then had, that, on said 23d day of March, 1858, a new patent was granted to said plaintiff on an amended description and specification, previously filed in the Patent Office, for the same invention and improvement, and in accordance with said amended description and specification, which said new letters patent bear date March 23, 1858;' and then profert is made 'of said reissued letters patent.'
 The infringement is next alleged to have been made or committed 'after the making of said letters patent, after the reissue thereof,' to wit, 'on the 25th day of March, 1858, and on divers other days and times between that day and the commencement of this suit.' There is no question that these averments confine the plaintiffs to infringements after the reissue under the new patent. The plea then alleges 'a surrender was made after the commencement of the suit of the patent before that time issued to him, and for the alleged infringement of which this action is brought.' Now, it is perfectly clear that the original patent cannot be resorted to as a foundation for suit for infringements after its surrender, and during the life of the reissued patent. So, too, it is equally clear that infringements during the time of the new patent cannot after its surrender survive such surrender; for all rights of action under the reissued patent are totally gone, and whatever rights survive, as to duration of the term, &c., have relation only to the first patent.
 Mr. Justice NELSON.
 
 
 1
 The suit was brought by Moffitt against the defendants, for the infringement of a patent for an 'improvement in grain separators.'
 
 
 2
 The defendants plead to the declaration, that since the commencement of the suit, the plaintiff had surrendered his patent to the United States, for the alleged infringement of which the action was brought. To which the plaintiff put in a general demurrer. The court overruled the demurrer, and sustained the plea, and gave judgment accordingly.
 
 
 3
 The 13th section of the act of Congress of July 4, 1836, provides, 'that if a patent shall be inoperative, &c., it shall be lawful for the Commissioner, upon the surrender to him of such patent,' 'to cause a new patent to be issued, &c., and the patent so reissued' 'shall have the same effect and operation in law on the trial of all actions hereafter commenced, for causes subsequently accruing, as though the same had been originally filed in the connected form,' &c.
 
 
 4
 Now, the point in the case is, whether or not the patentee may maintain a suit on the surrendered patent instituted before the surrender, if he has not availed himself of the whole of the provision, and taken out a reissue of his patent with an amended specification. The construction given to this section, so far as we know, and the practice under it, in case of a surrender and reissue, are that the pending suits fall with the surrender. A surrender of the patent to the Commissioner within the sense of the provision, means an act which, in judgment of law, extinguishes the patent. It is a legal cancellation of it, and hence can no more be the foundation for the assertion of a right after the surrender, than could an act of Congress which has been repealed. It has frequently been determined that suits pending, which rest upon an act of Congress, fall with the repeal of it. The reissue of the patent has no connection with or bearing upon antecedent suits; it has as to subsequent suits. The antecedent suits depend upon the patent existing at the time they were commenced, and unless it exists, and is in force at the time of trial and judgment, the suits fail.
 
 
 5
 It is a mistake to suppose, that, upon this construction, moneys recovered on judgments in suits, or voluntary payment under the first patent upon the surrender, might be recovered back. The title to these moneys does not depend upon the patent, but upon the voluntary payment or the judgment of the court.
 
 
 6
 We are satisfied the judgment of the court below is right, and should be affirmed.