# United States Court of Appeals
# for the Federal -Circuit

———————————

**FRESENIUS USA, INC.,** AND
**FRESENIUS MEDICAL CARE HOLDINGS, INC.,**
*Plaintiffs-Appellants,*

**v.**

**BAXTER INTERNATIONAL, INC.,** AND
**BAXTER HEALTHCARE CORPORATION,**
*Defendants-Cross Appellants.*

———————————

2012-1334, -1335

———————————

Appeals from the United States District Court for the Northern District of California in No. 03-CV-1431, Judge Phyllis J. Hamilton.

———————————

## ON PETITION FOR PANEL REHEARING AND REHEARING EN BANC

———————————

MICHAEL J. ABERNATHY, K&L Gates, LLP, of Chicago, Illinois, filed a combined petition for panel rehearing and rehearing en banc for defendants-cross appellants. With him on the petition were SANJAY K. MURTHY and DEVON C. BEANE; and CHRISTINA N. GOODRICH, of Los Angeles, California.

MICHAEL E. FLOREY, Fish & Richardson P.C., of Minneapolis, Minnesota, filed a response to the petition for plaintiffs-appellants. With him on the response was JUANITA R. BROOKS, of San Diego, California.

PETER G. PAPPAS, Sutherland Asbill & Brennan LLP, of Atlanta, Georgia, filed a brief for amicus curiae Intellectual Property Owners Association in support of the petition. With him on the brief were ANN G. FORT and STEPHANIE G. STELLA. Of counsel were RICHARD F. PHILLIPS and KEVIN H. RHODES, Intellectual Property Owners Association, of Washington, DC.

MICHAEL A. GOLLIN, Venable LLP, of Washington, DC, filed a brief for amicus curiae Biotechnology Industry Organization in support of the petition. With him on the brief were WILLIAM D. COSTON, MARTIN L. SAAD, and CHRISTOPHER S. CROOK, of Washington, DC.

---

Before RADER, *Chief Judge*, NEWMAN, LOURIE, DYK, PROST, MOORE, O'MALLEY, REYNA, WALLACH, and TARANTO, *Circuit Judges*.[1]

DYK, *Circuit Judge*, with whom PROST, *Circuit Judge*, joins, concurring in the denial of the petition for rehearing en banc.

O'MALLEY, *Circuit Judge*, with whom RADER, *Chief Judge*, and WALLACH, *Circuit Judge*, join, dissenting from the denial of the petition for rehearing en banc.

NEWMAN, *Circuit Judge*, dissenting from the denial of the petition for rehearing en banc.

---

[1] *Circuit Judges* CHEN and HUGHES did not participate.

PER CURIAM.

————————————————

A combined petition for panel rehearing and rehearing en banc was filed by defendants-cross appellants, and a response thereto was invited by the court and filed by plaintiffs-appellants. The petition for rehearing was referred to the panel that heard the appeal, and thereafter the petition for rehearing en banc, response and briefs of amici curiae were referred to the circuit judges who are authorized to request a poll of whether to rehear the appeal en banc. A poll was requested, taken, and failed.

Upon consideration thereof,

IT IS ORDERED THAT:

(1) The petition of defendants-cross appellants for panel rehearing is denied.

(2) The petition of defendants-cross appellants for rehearing en banc is denied.

(3) The mandate of the court will issue on November 12, 2013.

FOR THE COURT

<u>November 5, 2013</u>
Date

/s/ Daniel E. O'Toole
Daniel E. O'Toole
Clerk

# United States Court of Appeals for the Federal Circuit

---

**FRESENIUS USA, INC. AND
FRESENIUS MEDICAL CARE HOLDINGS, INC.,**
*Plaintiffs-Appellants,*

v.

**BAXTER INTERNATIONAL, INC. AND
BAXTER HEALTHCARE CORPORATION,**
*Defendants-Cross Appellants.*

---

2012-1334, -1335

---

Appeal from the United States District Court for the Northern District of California in No. 03-CV-1431, Judge Phyllis J. Hamilton.

---

DYK, *Circuit Judge*, with whom PROST, *Circuit Judge*, joins, concurring in the denial of the petition for rehearing en banc.

The court today rightly denies the petition for rehearing en banc. We write to briefly comment on the dissents to the denial of rehearing.

As discussed in the panel majority opinion, Judge Newman's view is simply inconsistent with longstanding authority. Judge O'Malley does not entirely agree with Judge Newman, *see* O'Malley, J., dissenting opinion at 1,

but argues that there is in fact a final judgment here. The dissents share one characteristic, however. They urge that a plaintiff should be allowed to secure damages for infringement of a patent that has been conclusively found invalid by the PTO.

Nothing in the statute or common sense supports the peculiar result urged by the dissents. The result in this case reflects a choice made by Congress and recently reaffirmed in the America Invents Act § 6, Pub. L. No. 112-29, 125 Stat. 284 (2011). A patentee's right to damages for infringement is "founded on the validity of his patent." *Worden v. Searls*, 121 U.S. 14, 25 (1887). As the panel majority pointed out, so long as the judgment in the infringement action is not final, "the language and legislative history of the reexamination statute show that Congress expected . . . that cancellation of claims during reexamination would be binding in concurrent infringement litigation." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1339 (Fed. Cir. 2013).

What constitutes a final judgment in this context was addressed by the Supreme Court in *Moffitt v. Garr*, where the Court interpreted the reissue statute, which has the same effect on pending litigation as does the reexamination statute. 66 U.S. 273, 282–83 (1880); 35 U.S.C. § 307(b). The Court held that the surrender of a patent (the equivalent of invalidation) "is a legal cancellation of [the patent], and hence can no more be the foundation for the assertion of a right after the surrender, than could an act of Congress which has been repealed." *Id.* at 283. Unless the patent remained in force "at the time of . . . judgment, the suit[] fail[s]." *Id.* This is in contrast to situations where the patentee has collected on a judgment because "moneys *recovered* on judgments in suits" could not be "recovered back" after surrender. *Id.* (emphasis added). *Moffitt* thus makes clear that a judgment of

infringement is only final when a judgment has been entered that would irrevocably allow execution and payment.

In arguing that the judgment here is final, Judge O'Malley confuses two distinct concepts of finality: (1) the preclusive effect, if any, of the original decision in *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288 (Fed. Cir. 2009) (*Fresenius I*), and (2) *Fresenius I*'s immunity to the preclusive effect of the PTO's decision affirmed in *In re Baxter Int'l, Inc.*, 678 F.3d 1357 (Fed. Cir. 2012). While *Fresenius I* may have been sufficiently final to be given collateral estoppel effect in another infringement litigation, we decided in *In re Baxter* it was not entitled to collateral estoppel effect in the PTO proceedings. *See* 678 F.3d at 1364–65. In any event, the potential preclusive effect of the *Fresenius I* decision in another infringement case cannot immunize *Fresenius I* from the effect of the final decision in *In re Baxter*. This is made clear by both Supreme Court authority and our own authority.

In *Simmons Co.* v. *Grier Bros. Co.*, 258 U.S. 82 (1922), the Supreme Court held that an intervening decision on validity was binding on a pending case where liability had been resolved but a final decree had not yet been entered. The district court there originally found infringement and entered judgment. *Id.* at 84. The Third Circuit reversed, concluding the asserted claim was invalid, and remanded to the district court to determine the amount of damages with respect to an unfair competition claim that had been joined to the infringement claim. *Id.* The Third Circuit's determination with respect to the infringement claim was final in all respects. *See id.* Nonetheless, when the Supreme Court decided in a separate case that the asserted patent claim was *not* invalid, that intervening judgment was held binding in the Third Circuit litigation. *Id.* at 85, 91. The Supreme Court explained that the Third Circuit's

original appellate mandate had not ended the case because it was not "a final decree . . . that finally adjudicate[d] upon the entire merits, leaving nothing further to be done except the execution of it." *Id.* at 88. Thus, even though the questions of infringement and validity had been resolved, the judgment was not immune to the effect of the subsequent decision by the Supreme Court because it had not ended litigation on all issues. *Id.* at 91.

In *Mendenhall* v. *Barber–Greene Co.*, 26 F.3d 1573, 1580 (Fed. Cir. 1994), this court held likewise that a final judgment of infringement and no invalidity had to be overturned in light of a subsequent ruling of invalidity because the case as a whole was not final. The court originally affirmed the judgment of infringement and no invalidity but remanded "for determination of damages and other issues." *Id.* at 1576. While the case was back in the district court, the asserted claims were held invalid in a separate appeal. *Id.* at 1577. The infringer then sought relief from the original determination on the basis of the intervening ruling. *Id.* at 1576. The patentee argued that the "proceedings . . . [we]re too far advanced for redetermination of liability." *Id.* at 1580. We nonetheless gave effect to our adjudication of invalidity because "the [original] judgment of this court on liability . . . resulted in a remand for further proceedings. It was not the final judgment in the case." *Id.* We explained that for a judgment to be immune to a subsequent determination of invalidity "the litigation must be entirely concluded so that [the patentee's] cause of action against [the infringer] was merged into a final judgment." *Id.* (citing Restatement (Second) of Judgments § 13 (1982)). Otherwise, we explained, the intervening adjudication of invalidity forms an "overriding defense" that precludes enforcement of the now-invalid patent claims. *Id.*

In both *Simmons* and *Mendenhall* the courts had rendered final decisions on infringement liability potentially sufficient to create collateral estoppel; yet the decisions were held not sufficiently final to bar the preclusive effect of a final judgment in another case. If we were to hold that our judgment in *Fresenius I* is immune to a subsequent adjudication of invalidity, we would contravene controlling Supreme Court authority in *Simmons* and controlling Federal Circuit authority in *Mendenhall*.[1]

---

[1] *Qualcomm, Inc. v. FCC*, 181 F.3d 1370 (D.C. Cir. 1999) is not to the contrary. That case did not hold that an interim determination was immune to the effect of a later final decision in another proceeding. It simply construed certain Congressional legislation as inapplicable to an earlier court decision. *See* 181 F.3d at 1378–81.

Judge O'Malley's reliance on *Bosch v. Pylon Manufacturing Corp.*, 719 F.3d 1305 (Fed. Cir. 2013) (en banc), is misplaced. That decision concerned whether a district court's decision was sufficiently final to be appealable under 28 U.S.C. § 1292(c)(2), a very different question than the one presented here. That section allows appeals in cases that "would otherwise be appealable . . . and [are] final except for an accounting." *Id.* It does not speak to the effect of such judgments outside the context of appealability.

# United States Court of Appeals for the Federal Circuit

FRESENIUS USA, INC. AND
FRESENIUS MEDICAL CARE HOLDINGS, INC.,
*Plaintiffs-Appellants,*

v.

BAXTER INTERNATIONAL, INC. AND
BAXTER HEALTHCARE CORPORATION,
*Defendants-Cross Appellants.*

2012-1334, -1335

Appeal from the United States District Court for the Northern District of California in No. 03-CV-1431, Judge Phyllis J. Hamilton.

O'MALLEY, *Circuit Judge*, with whom RADER, *Chief Judge*, and WALLACH, *Circuit Judge*, join, dissenting from the denial of the petition for rehearing en banc.

The panel majority's decision in this case goes a long way toward rendering district courts meaningless in the resolution of patent infringement disputes. It does so by creating a new regime wherein a district court's final adjudication can be undone by later decisions of the Patent and Trademark Office ("PTO"). While I do not believe—as the panel dissent does—that the PTO had no authority to assess the patentability of the patents in suit or impact the patent owner's ability to enforce those patents against other putative infringers, I believe the

PTO's actions cannot, and should not be permitted to, dislodge the judgment for past infringement awarded to Baxter.[1]

In this case: (1) the district court resolved all issues of validity, infringement, past damages, and the right to post-verdict relief; (2) our court affirmed the resolution of these issues on appeal; and (3) the United States Supreme Court denied Fresenius' petition for a writ of certiorari. Following the denial of cert, neither the district court, nor this court, could disturb Baxter's entitlement to damages for infringement. But, according to the majority, the PTO could—and did—erase Baxter's adjudicated right to be compensated for that infringement. Under no reasonable application of the law, however, could the PTO's actions eradicate that judgment. For the reasons below, I dissent from this refusal to consider this case en banc.

## I. BACKGROUND

Fresenius filed suit in district court seeking declaratory judgments of invalidity and non-infringement with respect to three of Baxter's patents. Baxter counterclaimed for infringement, and, after Fresenius stipulated to infringement, Baxter prevailed on the issue of validity. Ultimately, a jury awarded Baxter $14.266 million, and the district court entered judgment in accordance with that verdict. The court then assessed the need for, and proper form of, injunctive relief. It determined that an injunction was appropriate, but delayed entry of that

---

[1]    I do agree with the panel dissent (and the Court of Appeals for the District of Columbia in *Qualcomm Inc. v. FCC*, 181 F.3d 1370 (D.C. Cir. 1999)) that the panel majority's decision has constitutional implications arising from principles dating back to *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). *See Qualcomm*, 181 F.3d at 1379–80.

injunction for nine months to allow Fresenius a reasonable period of time in which to design around Baxter's patented invention. To protect Baxter in the interim, the district court imposed an obligation on Fresenius to pay a royalty to Baxter on any post-verdict sales of infringing machines and related goods. Both parties appealed portions of that judgment to this court.

In Fresenius' first appeal to this court, it challenged the district court's: (1) grant of judgment as a matter of law on the issue of validity; (2) entry of a permanent injunction; (3) choice of royalty used for post-verdict sales; and (4) claim construction. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1293–94 (Fed. Cir. 2009) ("*Fresenius I*"). Fresenius *did not appeal* the pre-verdict damages awarded by the jury. *Id.* In *Fresenius I*, we invalidated asserted claims from two of the three patents at issue, but did not disturb either the finding of infringement as to the third patent—U.S. Patent No. 5,247,434 ("the '434 patent")—or the pre-verdict damages award. *Id.* at 1294–1302. We also found that the district court acted within its discretion to grant a permanent injunction against Fresenius' continued infringement. We remanded the matter to the district court, however, for the limited purpose of considering two discrete issues in light of our decision: (1) the continuing propriety and scope of any permanent injunction; and (2) the proper measure of any royalty to be paid on post-verdict sales pending the effective date of that injunction.[2] *Id.* at 1302.

---

[2]    As to the measure of royalty, we said, "[i]n particular, we note that our reversal of JMOL may affect the district court's consideration of the putative royalty rate that would result from a hypothetical negotiation between Baxter and Fresenius." *Fresenius I*, 582 F.3d at 1303. And, while affirming the district court's entry of permanent injunction, we "nonetheless" vacated the injunction

In other words, infringement, validity, and past damages were fixed between the parties. Even the trial court's authority to award post-verdict relief had been confirmed. Without question, pre-verdict *damages* were not at issue in the first appeal, and were not subject to revision on remand. Our mandate issued, and Fresenius petitioned for a writ of certiorari, which the Court denied. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 559 U.S. 1070 (2010).

During the limited remand that followed *Fresenius I*, the trial court recalculated the post-verdict royalty award as directed, reducing the royalty percentages for the sales of both the infringing machines and the related goods. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1341 (Fed. Cir. 2013) ("*Fresenius II*"). Injunctive relief was no longer at issue because the '434 patent had expired.[3] *See id.* at 1333. The district court again entered judgment, both confirming its rulings as to the questions presented on remand and reaffirming the earlier, already affirmed, judgment in Baxter's favor. Both parties again appealed to this court.

While that appeal was pending, our court affirmed a PTO decision that the relevant claims of the '434 patent were unpatentable. *See In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1358 (Fed. Cir. 2012). *In re Baxter* dealt with a parallel reexamination proceeding that Fresenius initiated three years after it filed the district court suit against

---

and remanded for the district court to "revise or reconsider the injunction" in light of our reversal of JMOL on two of the patents in suit. *Id.* at 1304.

[3]     The patent at issue expired in April 2011. The post-verdict award thus covered a finite period which was bookended by the date of the verdict and the expiration of the patent.

Baxter seeking a declaratory judgment that the '434 patent was invalid. *See Fresenius I*, 582 F.3d at 1293; *In re Baxter*, 678 F.3d at 1360.[4]

In affirming the PTO's determination, we noted that, although the PTO's decision differed from the district court's resolution of the issue of validity and our affirmance of that resolution, our decision "[was] not about the relative primacy of the courts and the PTO, *about which there can be no dispute.*" *In re Baxter*, 678 F.3d at 1365 (emphasis added). We merely concluded that, under the lesser burden of proof and broader claim construction the PTO employs, its conclusion as to the patentability of the '434 patent was neither unsupportable nor unauthorized. *See id.* at 1364–65. When this court denied en banc rehearing in *In re Baxter*, moreover, four members of this court concurred in order to reaffirm the unremarkable proposition that PTO actions in a reexamination proceeding cannot alter the binding effect of a prior judgment in a judicial proceeding. *See In re Baxter Int'l, Inc.*, 698 F.3d 1349, 1351 (Fed. Cir. 2012). Indeed, the PTO itself conceded that, "if a federal court awards relief to a patent holder against an infringer, a subsequent reexamination decision that the patent is invalid does not alter [that judgment's] binding effect on the parties [to the litigation]." *Id.* (quoting PTO Response from request for rehearing en banc) (alteration omitted).

Our court then turned to the appeal in this case. The panel majority here concluded that, because we affirmed the PTO's decision that claims 26–31 of the '434 patent

---

[4]   The district court entered its post-remand judgment on March 16, 2012, two months before we issued our decision in *In re Baxter*. Thus, while both appeals were pending at the same time, *In re Baxter* was ahead of this case in the queue.

are unpatentable in *In re Baxter* before we had the chance to review the district court's recalculation of post-verdict royalties, the entirety of the "pending litigation" had been rendered moot. The panel majority vacated all aspects of the district court's judgment, and instructed the district court to dismiss the case. *Id.* at 1347.

## II. FINALITY

Once the Supreme Court denied Fresenius' petition for certiorari following our decision in *Fresenius I*, Fresenius' liability for infringement, its failure to prove invalidity, and its responsibility for past damages were firmly established and beyond challenge. The only live issues remaining in the case related to *post-verdict* relief. And, even the live issues regarding post-verdict relief did not concern the right to such relief—which was established; the remand only asked that the court reconsider the scope of and formula used for such relief. All other aspects of the case had been conclusively resolved. Importantly, those remaining calculations were ones for the court to undertake because they fell within its equitable authority to award prospective relief in the form of an injunction, a compulsory license, or some combination thereof. *See Edwards Lifesciences AG v. CoreValve, Inc.*, 699 F.3d 1305, 1314–15 (Fed. Cir. 2012) (noting that injunctions and royalty-bearing licenses in lieu of an injunction are equitable remedies). As such, the PTO action could not render the "pending" litigation moot as the panel majority held.

The panel majority concluded, however, that the issues of infringement, validity, and past damages in *Fresenius I* were not sufficiently final to avoid obliteration by the result in *In re Baxter*. It did so by relying on an inapplicable and antiquated view of finality. In particular, the majority stated that it is well established, under the traditional view of finality, that when the scope of *damages* remains to be determined, there is no binding

final judgment on the parties. *Fresenius II*, 721 F.3d at 1341–42 (citing Restatement (Second) of Judgments § 13(b) (1982) and 18A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4432 (2d ed. 2002)). But *damages* were not still at issue when the action was remanded to the district court, and were not at issue when the PTO rendered the decision which the panel majority gives such broad-sweeping effect. And, the panel majority's view of finality is significantly out of step with the law as it stands today. *See* 18A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4432 (2d ed. 2002) ("[R]ecent cases have suggested that preclusion may be appropriate if the order is sufficiently firm").

In *Fresenius I*, our rulings regarding the '434 patent were unequivocal and left nothing for the district court to do regarding the merits. The district court was only asked to reconsider the scope of post-verdict relief. Well-established law recognizes finality in situations like the one presented here—where the merits are conclusively decided—even though other issues may remain. *See* 18A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4432 (2d ed. 2002) ("If an appellate court terminates the case by final rulings as to some matters only, preclusion is limited to those matters actually resolved by the appellate court . . . ."); *see also* Restatement (Second) of Judgments § 13(b), (comment e) (1982) ("A judgment may be final in a res judicata sense as to a part of an action although litigation continues as to the rest.").

Indeed, the district court lacked the power to disturb the resolution of the *merits* on remand. For that matter, *this court* lacked the power post-remand to affect the merits. For decades, courts have ruled that the preclusion doctrine applies to orders that establish liability but leave open only collateral matters. For example, the Second Circuit has held that "[c]ollateral estoppel does not re-

quire a judgment which ends the litigation and leaves nothing for the court to do but execute judgment, but includes many dispositions which, though not final in that sense, have nevertheless been fully litigated." *Zdanok v. Glidden Co.*, 327 F.2d 944, 955 (2d Cir. 1964) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945) and *Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir. 1961)). The regional circuit from which this case originates agrees: "[t]he fact that several questions were deferred for later decision does not render the doctrine of res judicata inapplicable. A case remanded for further hearing or over which jurisdiction is retained for some purposes may nonetheless be final as to other issues determined." *Bullen v. De Bretteville*, 239 F.2d 824, 829 (9th Cir. 1956) *overruled on other grounds*, *Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012).

The Second Circuit's *Zdanok* decision, authored by Judge Henry Friendly, is instructive. In the first action in that case, the Second Circuit reversed the trial court's determination, entered judgment for the plaintiffs, and remanded to the district court to determine the scope of damages. 327 F.2d at 947. The Supreme Court declined to review that decision. *Id.* On remand, a second action involving new plaintiffs against the same defendants was consolidated with the first. *Id.* at 947–48. On a second appeal, the Second Circuit held that the new plaintiffs were entitled to preclude relitigation of liability, even though damages in the first action remained unresolved. *Id.* at 954–55.

The unreviewability of the merits in *Fresenius I* is even firmer than in *Zdanok*. In *Fresenius I*, past damages had already been resolved, and the only live issue related to post-verdict relief. In other words, while the scope of (though not the right to) post-verdict relief may have been uncertain, Fresenius and Baxter fully litigated the merits

*including past damages.* The finality of those issues should not be disturbed lightly.[5] *Cf. Moffitt v. Garr*, 66

---

[5] The concurrence asserts that *Worden v. Searls*, 121 U.S. 14 (1887) stands for the proposition that a patentee's right to damages is founded on the validity of the patent. Concurrence at 2. In doing so, the concurrence misunderstands *Worden*. That case merely stands for the proposition that the right to fines for violation of a preliminary injunction is founded on that injunction, which in turn is predicated on the validity of the patent. *Worden*, 121 U.S. at 25 ("[Plaintiff's right to fines and damages were] founded on his right to the injunction, and that was founded on the validity of [the] patent"). Indeed, *Moffitt v. Garr* contradicts the concurrence's assertion. *Moffitt* held that title to damages depends on the *judgment* of the court. *See Moffitt*, 66 U.S. at 283. And it is black letter law that once a judgment is rendered, the cause of action merges into the judgment and is immune to any pre-existing defenses, such as invalidation (or cancellation—a different concept contrary to the concurrence's assertions) of the claims of the patent. *See* Restatement (Second) of Judgments § 18; *see also Wisconsin v. Pelican Ins. Co.*, 127 U.S. 265, 292–93 (1888) ("The essential nature and real foundation of a cause of action are not changed by recovering judgment upon it; and the technical rules, which regard the original claim as merged in the judgment, and the judgment as implying a promise by the defendant to pay it, do not preclude a court, to which a judgment is presented for affirmative action, (while it cannot go behind the judgment for the purpose of examining into the validity of the claim,) from ascertaining whether the claim is really one of such a nature that the court is authorized to enforce it"), *overruled on other grounds, Milwaukee Cnty v. M.E. White Co.*, 296 U.S. 268, 278 (1935); *Cromwell v. Cnty of Sac*, 94 U.S. 351, 352–53 (1876) ("The judgment is as conclusive, so far as future

U.S. 273, 283 (1861) ("It is a mistake to suppose. . . that. . . moneys recovered on judgments in suits. . . might be recovered back [after a patent is cancelled]."); *McCullough v. Virginia*, 172 U.S. 102, 123 (1898) ("It is not within the power of a legislature to take away rights which have been once vested by a judgment.").

Under these circumstances, *Qualcomm*, is directly on point, and the majority should not have dismissed it out of hand. Indeed, by doing so, the majority creates a circuit split on this important issue. In that case, Qualcomm had applied for a license with the FCC, which the Commission denied. *See Qualcomm*, 181 F.3d at 1372. On appeal, the United States Court of Appeals for the District of Columbia reversed the FCC's decision and remanded to the Commission to "fashion the appropriate remedy." *Id.* at 1376. Notably, because the preferential license at issue had been granted to another party in the interim, the

---

proceedings at law are concerned, as though the defences never existed. The language, therefore, which is so often used, that a judgment estops not only as to every ground of recovery or defence actually presented in the action, but also as to every ground which might have been presented, is strictly accurate, when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever"). Thus, while the PTO's cancellation of the patent renders it prospectively invalid, the cancellation cannot render a prior *judgment* for damages invalid. *See Pa. v. Wheeling & Belmont Bridge Co.*, 59 U.S. 421, 431 (1856) ("[I]f the remedy in this case had been an action at law, and a judgment rendered in favor of the plaintiff for damages, the right to these would have passed beyond the reach of the power of congress").

D.C. Circuit recognized that some alternative remedy might be needed to make Qualcomm whole for the harm caused by the improper denial of its original license request. *Id.* at 1376–77. Meanwhile, Congress withdrew the FCC's authority to grant the type of license at issue, and the Commission dismissed Qualcomm's application, claiming it no longer had authority to act. *Id.* at 1374–75. On appeal, the D.C. Circuit explained that its remand merely assigned a ministerial role to the FCC and did not allow it to disturb the merits of its judgment. *Id.* at 1377. In other words, the decision resolving the merits was *final* despite the remand to fashion an appropriate remedy.

As in *Qualcomm*, this court's mandate established that Baxter was entitled to a remedy because infringement—and the right to damages—were established and litigated to finality. Indeed, even the right to post-judgment relief was established. The only question was the scope of that post-judgment remedy—a mere ministerial act of re-calculating prospective relief. While Baxter lost its *prospective* patent rights because of the PTO action, that executive agency may not undermine a final determination of past liability, damages, and the right to appropriate post-verdict relief in *this* case between *these* parties.

The panel majority attempts to distinguish *Qualcomm* in a footnote, stating that, because the D.C. Circuit had ordered "specific" relief on remand in that case, it is inapplicable here. *Fresenius II*, 721 F.3d at 1346 n.12. According to the majority's reasoning, our remand in *Fresenius I* was not specific enough; it claims that the matter would have been sufficiently final to avoid being undermined by later PTO action only if we ourselves had determined the scope of the post-verdict relief to which Baxter was entitled. But this effort to distinguish *Qualcomm* falls flat. Indeed, the remand in *Qualcomm* was even broader than our directive to the district court here. In *Qualcomm*, the FCC was charged with fashioning "an

appropriate remedy," such that the question of whether Qualcomm could be given a license *or could only be afforded some alternative remedy* was left entirely to the FCC. Here, the only questions left open on remand were whether the royalty rate the district court employed to calculate the size of the post-verdict damages needed to be adjusted to reflect the fewer number of infringed claims and whether the scope of the injunction should be adjusted for the same reason. *Qualcomm* is not distinguishable.

The majority relies on two cases to support it decision: *Simmons Co. v. Grier Brothers Co.*, 258 U.S. 82 (1922), and *Mendenhall v. Barber Greene Co.*, 26 F.3d 1573 (Fed. Cir. 1994). Neither of those cases, however, involved an appeal from a final judgment and completed accounting (i.e., in those cases, no measure of damages had been established). In *Mendenhall,* we highlighted the interlocutory nature of the appeal:

> A judgment on an appeal under [28 U.S.C] § 1292(c)(2) allowing interlocutory appeals of liability judgments in patent cases does not end the litigation. The purpose of § 1292(c)(2) is to permit district courts to stay and possibly *avoid a burdensome determination of damages*. This provision for *interlocutory appeal* does not render a district court decision on fewer than all issues in the case a final decision.

26 F.3d at 1580–81 (emphases added and citations omitted). We also noted in *Mendenhall* that the district court "did not lack power at any time prior to entry of its final judgment at the close of the accounting to reconsider any portion of its decision and reopen any part of the case." *Id.* at 1581 (quoting *Marconi Wireless Co. v. United States*, 320 U.S. 1, 47 (1943)). Likewise, in *Simmons,* the Supreme Court noted the interlocutory nature of the appeal, and stated that the judgment was not "final" because "an accounting," which at the time was the *only*

procedure by which damages for infringement were calculated, "was necessary to bring the suit to a *conclusion upon the merits*." *Simmons*, 258 U.S. at 89 (emphasis added).

The circumstances here are entirely different. Final judgment was entered, the calculation of past damages had occurred, and appellate review of those determinations had concluded. Baxter's right in the judgment had vested. In other words, unlike in *Mendenhall* and *Simmons*, a true "accounting" had occurred. *See Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1313 (Fed. Cir. 2013) (en banc) (defining an "accounting" as used in 28 U.S.C. § 1292(c)(2) as including any calculation of an infringer's profits or a patentee's damages, including a trial on damages). The only remaining issues related to post-verdict relief. The district court, in fact, lacked the power to reopen the case to reassess Baxter's entitlement to pre-verdict damages. *See Marconi*, 320 U.S. at 47. Consequently, nothing in either *Mendenhall* or *Simmons* suggests that an administrative agency's actions can undermine the conclusive resolution of rights by the courts.[6]

---

[6]  Even setting the critical distinctions between this case and *Simmons* aside, the panel majority's reliance on the 1922 decision in *Simmons* cannot be justified today. *Simmons* involved a suit in equity, where the damages calculation involved only a calculation of an infringer's profits and was preserved for resolution by a special master after the court's liability determinations were made. *Simmons*, thus, predates the merger of law and equity and the changes in the law which guaranteed patentees and putative infringers the right to a jury trial and authorized patentees to collect a broader range of damages. *See Bosch*, 719 F.3d at 1314–17. Thus, while the *Simmons* Court did state that "the ordinary rule [is]

As we have held, an *adjudged infringer* may face both an injunction and a *compulsory* license.  *See Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007) ("Under some circumstances, awarding an ongoing royalty for patent infringement in lieu of an injunction may be appropriate.").  An injunction and compulsory license are both inherently prospective.  While we may at times improperly use the term "damages" as a shorthand term to encompass the concept of the right to some prospective *monetary* relief, that cannot change the equitable character of that relief.  For instance, in *Paice*, we rejected the argument that there was a Seventh Amendment right to have a jury determine any post-verdict royalty rate.  504 F.3d at 1315–16.  There, we emphasized the difference between an ongoing royalty and damages.  We agreed with the general proposition that a determination of damages carries a right to a jury trial, but stressed the well-established principle that "not all monetary relief is properly characterized as 'damages.'"  *Id.* at 1316 (citing *Root v. Ry.*, 105 U.S. 189, 207 (1881); *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988)).  Had our remand intended to require that the trial court reconsider "damages" and not merely prospective equitable relief, we would have been required to remand the matter for a new trial, which we did not.

Indeed, Fresenius did request a new trial to determine damages after our remand, which the district court correctly denied.  *See Fresenius USA, Inc. v. Baxter Int'l Inc.*, Civ. No. 4:03–cv–1431, ECF No. 1095 (N.D. Cal. May

that there can be but one final decree in a suit in equity," we are no longer operating "in equity."  This was an action *at law* which included a jury trial on damages.  Concepts of finality in an action where damages were calculated by a special master are irrelevant.

5, 2011). Fresenius argued that a new trial on pre-verdict damages was warranted because the jury returned a single, generalized verdict covering asserted claims on three patents, two of which were subsequently invalidated by this court. *Id.* In denying the motion, the district court noted that Fresenius did not argue at trial or on appeal that the past damages award depended on the number of patents infringed, all of which covered the same technology and shared a common specification. *Id.* In fact, Fresenius and its experts contended throughout the litigation that damages should be calculated based on the value of the technology, not the number of patents or claims infringed. *See id.* at ECF No. 447, Ex. 1 (N.D. Cal. May 5, 2011) (Fresenius' damages expert report demonstrating that its damages theory was based on the key claimed feature, not the number of patents). As the district court understood, we knew that only one of the three asserted patents remained after our decision in 2009, and we did not vacate the past damages award or direct the court on remand to conduct a new damages trial. *See id.*, at ECF 1095 ("Plainly, the Federal Circuit knows how to vacate a damages award and remand for a new trial on damages."). The district court was correct to note that "[t]he mandate rule requires that the district court follow an appellate decree as the law of the case." *Id.* (quoting *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1356 (Fed. Cir. 2009)).[7]

---

[7] The panel majority points to the trial court's refusal to let Baxter execute on the earlier judgment until after the court's resolution of the issues sent to it via our remand in support of its view that the earlier judgment must not have been truly final. The panel majority's attempt to place any weight on that fact suffers from three flaws. First, our court *did not* vacate the original final judgment in *Fresenius I.* Had we intended to do so,

## III. BOSCH

The panel majority rightly anticipated—and attempted to forestall—criticism from those who would find the concepts of finality employed here wildly divergent from those employed by our court in *Bosch*. 719 F.3d 1305. In *Bosch*, this court held, en banc, that liability determinations in patent cases are final for purposes of immediate appeal under 28 U.S.C. § 1292(c), even when a jury trial on both damages and willfulness remains. *See id.* at 1316, 1319–20. There, we concluded that damages and willfulness determinations are sufficiently "ministerial" to constitute no more than an "accounting" within the meaning of § 1292(c), thus rendering the liability determination a "final" judgment for purposes of appeal.

Despite the very liberal view of finality we employed in that context, the panel majority declares that we must employ the stingiest view of that concept when deciding at what point parties may rely on litigated determinations of their rights. Specifically, as long as any act, even the post-verdict recalculation which we asked the trial court to consider on remand in this case, remains, no aspect of the litigation can be "final" for preclusion purposes.

---

we would have. Second, even if the trial court thought our order had the effect of vacating all aspects of its original judgment, the court would have been wrong. It would be unheard of for this court to defer to a trial court's incorrect view of the *legal* effect of *our own* order. Third, the reluctance to allow Baxter to execute on the earlier judgment has no bearing on whether that judgment was final for preclusion purposes. Given its unwillingness to revisit the damages award, it appears that the district court considered those aspects of its multi-year dealings with the litigation unchallengeable by Fresenius and not open to unraveling by any collateral activity by the PTO.

The panel majority purports to justify this chasm between the sweeping rule it lays down here and the one the court established in *Bosch* by stating that "[d]efinitions of finality cannot be automatically carried over from appeals to preclusion problems," citing to Wright, Miller, and Cooper. *See Fresenius II*, 721 F.3d at 1340–41. While this principle is true *today*, however, it was not "traditionally" true. *See* 18A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4432 (2d ed. 2002) ("*Traditionally*, finality was identified for purposes of preclusion in *much the same way* as it was identified for purposes of appeal.") (emphasis added). Yet it is "traditional" and outdated principles of finality to which the panel majority asserts we must cling. And, more importantly, while it is true *today* that notions of finality for purposes of appeal and preclusion will sometimes differ, that is because finality often may be applied *less* strictly for preclusion purposes than for purposes of appeal, *not more so. See Miller Brewing Co. v. Joseph Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th Cir. 1979) ("To be 'final' for purposes of collateral estoppel the decision need only be immune, as a practical matter, to reversal or amendment. 'Finality' in the sense of 28 U.S.C. § 1291 is not required."); *see also Zdanok*, 327 F.2d at 955; *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209–10 (3d Cir. 2001) ("[W]e commented that finality for purposes of issue preclusion is a more 'pliant' concept than it would be in other contexts."); *Swentek v. USAIR, Inc.*, 830 F.2d 552, 561 (4th Cir. 1987) *abrogated on other grounds, Mikels v. City of Durham, N.C.*, 183 F.3d 323 (4th Cir. 1999) ("Finality for purposes of collateral estoppel is a flexible concept . . . ."); *Pye v. Dep't of Transp. of Georgia*, 513 F.2d 290, 292 (5th Cir. 1975) ("To be final a judgment does not have to dispose of all matters involved in a proceeding."); *Syverson v. Int'l Bus. Mach. Corp.*, 472 F.3d 1072, 1079 (9th Cir. 2007) (same). Thus, while the principle the panel majority cites—that finality for preclusion purposes sometimes differs from finality for

purposes of appeal—is correct, in these circumstances that principle mandates a conclusion which is the direct opposite of that which the panel majority draws.[8]

The question we must decide is at what point a court judgment may be deemed binding on the parties to that judgment. For preclusion purposes, that question turns on the questions decided, the firmness of those decisions, and whether they are open to revision. *See Lummus*, 297 F.2d at 89 ("Whether a judgment, not 'final' in the sense of 28 U.S.C. § 1291, ought nevertheless be considered 'final' in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the

---

[8]    In its criticism of the panel dissent's finality analysis, the panel majority cites the Restatement of Judgments for the proposition that, when two final court judgments conflict, the later judgment, not the earlier one, has preclusive effect going forward. *See Fresenius II*, 721 F.3d at 1347 n.14 (citing Restatement (Second) of Judgments § 15 (1982)). With this citation, the panel majority implies that the Restatement would command that the decision in *In re Baxter* controls over that in *Fresenius I* because it came later in time. But the scenario envisioned by the section of the Restatement upon which the panel majority relies is wholly inapplicable to the situation here. The Restatement section the panel majority cites actually explains that "[w]hen in two actions inconsistent final judgments are rendered," because the party who could have relied on the res judicata effect of the first judgment failed to assert it, "it is the later, not the earlier, judgment that is accorded conclusive effect in a *third action* under the rules of res judicata." Restatement (Second) of Judgments § 15 (1982) (emphasis added). Baxter consistently has relied on the preclusive effect of the first judgment here, and there is no third action.

adequacy of the hearing, and the opportunity for review.").  None of the critical questions regarding Fresenius' liability for its past infringement of Baxter's patents remained undecided or open to debate when the PTO cancelled the '434 patent.  While Baxter  lost its right to bring an infringement action against anyone else once the PTO acted and we affirmed that decision, its right to enforce its judgment in *Fresenius I* was inviolate.

## IV. IMPLICATIONS

The majority opinion here, coupled with this court's *Bosch* decision, will interfere with litigants' ability to access the courts to redress their grievances in a meaningful way and will drastically limit the case management options available to district court judges.  *Bosch* created an incentive for district courts to bifurcate liability determinations from damages and willfulness trials—and all other remedial determinations.  Courts will be tempted to try to limit the time and resources spent on patent cases by seeking an interlocutory review of their claim construction and liability determinations.  In all but those cases where liability determinations in favor of an alleged infringer are affirmed, however, such bifurcations will drag out the litigation, causing multiple appeals and probably multiple remands.  Where that occurs, after the panel opinion in this case, even years of litigated decisions, which may be affirmed piecemeal, could be rendered meaningless by much later PTO decisions.  And, when trial courts come to understand the fragility of their judgments, stays in the face of reexaminations—which the PTO grants over 92% of the time—will become inevitable.[9]

---

[9]    While stays might well be appropriate in the face of a reexamination, those determinations should be made on a case-by-case basis, not thrust on district courts out of

We should be striving to make trial courts more accessible to litigants, not less so; more streamlined and efficient, not less so; and more fair, not substantially less so. The panel majority decision in this case is, in my view, both incorrect and ill-advised.

## V. CONCLUSION

For these reasons, I believe that our remand to determine the scope of post-verdict relief does not undermine the finality of our determination affirming infringement, validity, past damages, and the right to post-verdict relief between Fresenius and Baxter in *Fresenius I*. Our mandate issued, and the Supreme Court denied the petition for certiorari in that case. Those issues are final. While our decision in *In re Baxter* eliminated any prospective rights Baxter may have against third parties, it does not extinguish Baxter's vested rights in the final judgment on the merits of this case against Fresenius.

I respectfully dissent.

---

fear that the effort they put into the cases before them will be for naught. The district judges in this case invested nine years in resolving the dispute between Baxter and Fresenius, issued multiple thorough and careful opinions, and conducted two jury trials. Our panel majority renders that all for naught.

# United States Court of Appeals for the Federal Circuit

---

**FRESENIUS USA, INC.,** AND
**FRESENIUS MEDICAL CARE HOLDINGS, INC.,**
*Plaintiffs-Appellants,*

**v.**

**BAXTER INTERNATIONAL, INC.,** AND
**BAXTER HEALTHCARE CORPORATION,**
*Defendants.*

---

2012-1334, -1335

---

Appeal from the United States District Court for the Northern District of California in No. 03-CV-1431, Judge Phyllis J. Hamilton.

---

NEWMAN, *Circuit Judge*, dissenting from denial of the petition for rehearing en banc.

The errors in the court's ruling that an executive branch agency can override the judgments of Article III courts, on the same issue and the same premises between the same parties, were discussed in my dissent from the court's ruling and reported at 721 F.3d 1347–1365. However, Article III judgments are "final and conclusive upon the rights of the parties," *Gordon v. United States*, 117 U.S. 697, 702 (1864). A system of override by an administrative agency interferes with the power and obligation of the courts to "render dispositive judgments."

*Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 219 (1995). Instead of finality after full litigation, full trial in the district court, and full appeal in the Court of Appeals, now the question of patent validity remains open, vulnerable to contrary disposition, unconstrained by any form of estoppel or restraint flowing from the finality of adjudication.

The court now declines en banc review. I write to stress the concern that this ruling is not only in violation of the Constitution, precedent, and the Federal Rules, but is contrary to the purposes of patent law as embodied in the statute and the Constitution.

The system of patents is founded on providing an incentive for the creation, development, and commercialization of new technology—"to promote the progress of science and useful arts"—achieved by providing a period of exclusivity while requiring disclosure of new technology. The court has weakened that incentive, by reducing the reliability of the patent grant, even when the patent has been sustained in litigation. This loss cannot be underestimated, especially for technologies that incur heavy development costs yet are readily copied. *Amicus curiae* the Biotechnology Industry Organization describes the effect of this ruling on biotech products:

> Biotechnology products typically require close to a decade of development work and a fully capitalized investment that can approach $1.2 billion. Biotechnology companies rely heavily on patents to protect such substantial investments of time, resources, and capital. Devaluation of patent assets leads to a reduced incentive for companies to research, develop, and commercialize new biotechnology products that heal, feed, and fuel the world.

Other technologies are affected by the same principles, to varying degrees depending on the cost of development and the ease of copying.

The panel decision destabilizes issued patents, by ignoring the rules of finality. No public purpose is served by a regime in which commercially valuable innovations can be tied up in a succession of judicial and administrative proceedings until, as here, the patent expires. The Baxter patent in this case was immobilized in litigation or reexamination for eleven years. I emphasize the gamesmanship and abuses that are now facilitated, with no balancing benefit to the public.

Here the District Court for the Northern District of California rendered a final judgment of patent validity, infringement, and damages to the date of judgment. The Federal Circuit affirmed, leaving only the calculation by the district court of post-judgment damages. After this affirmation, the PTO issued a contrary reexamination decision on the question of obviousness—a matter of law—and the Federal Circuit affirmed the contrary PTO result, with no attempt to distinguish its prior judgment.

My concern is with the unconstrained free-for-all that this court has created, for PTO records show pervasive duplication of litigation and reexamination of the same patents.[1] The ensuing instability replaces innovation incentive with litigation cost, along with adverse effect on the patent based incentive for technological advance. Such gaming of a system designed to provide investment incentive through property rights, warrants thoughtful remediation, not facilitation.

---

[1] The PTO statistical report for the period through September 30, 2012 states that of 1,919 patents that have undergone *inter partes* reexamination since inception of that system in 1999, at least 1,272 (66%) were also involved in district court litigation. Of 12,569 patents that have undergone *ex parte* reexamination since inception in 1981, at least 3,994 (32%) were involved in litigation. *See* http://www.uspto.gov/patents/stats/.

In these post-mortem comments on the relation between litigation and PTO reexamination, both Judge Dyk and Judge O'Malley misstate my position on the role of reexamination. I was one of the initiators of the reexamination system, the product of the Carter Commission on which I served. My concern is its abuse. I have never opined that there are no circumstances in which the PTO may reexamine a patent that has been through litigation, and I have intentionally avoided discussion of speculative situations. Here, this court's final decision followed full litigation, and no reason is offered for departure from the law of the case, in favor of subsequent PTO reexamination on the same issues and evidence, requested by a party litigant.

Also contrary to Judge Dyk's assertion, I do not suggest that a court's final decision is always "immune" from review, for it is undisputed that Article III courts have the power to revisit their final judgments in appropriate circumstances. *See* Fed. R. Civ. P. 60 ("Relief From a Judgment or Order"). However, routinely subjecting Article III judgments to agency override is a different matter. In *Fresenius II* this court ruled that the PTO's reexamination decision "must be given effect," 721 F.3d at 1332, even if a contrary decision had previously been reached in the district and circuit courts and was final for purposes of preclusion, estoppel, and stare decisis.

In distinction from the procedure here ratified, where this court holds that neither the PTO nor this court is bound by this court's prior decision, the principles of judicial finality are respected in every other circuit, as summarized at 721 F.3d 1347 *et seq.* As the Court stated in *Montana v. United States*, 440 U.S. 147, 153 (1979), "a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies." If the law of this court is to differ from the law of the land, we should confirm en banc the

court's intention to divest Article III courts of finality in patent cases. Neither "statute nor common sense" supports this theory. Nor does the newly enacted America Invents Act, cited by Judge Dyk as "reaffirming" congressional intent that Article III courts are subject to override by the PTO. Concurring Op. at 2 ("The result in this case reflects a choice made by Congress and recently reaffirmed in the America Invents Act . . . ."). No such congressional choice can be found, nor any reaffirmation of the ruling in this case.

I respectfully dissent.