O’MALLEY, Circuit Judge,
dissenting.
I agree that, once this Court affirmed the PTO’s cancellation of claim 26 of the '683 patent, an ongoing injunction barring infringement of that patent could no longer stand and must be vacated prospectively. That conclusion comes easily; as the majority notes, even Appellant’s counsel conceded the point during oral argument. Maj. Op. at 1355. The more difficult question is whether Appellees are relieved of all penalties for having violated the injunction during the four years it was in place before the PTO’s cancellation was affirmed.[1]
On this second question, the majority concludes that “[tjhis case does not require us to decide whether civil contempt sanctions would survive if the injunction had been final at the time the district court imposed civil contempt sanctions,” Maj. Op. at 1358, because, under Fresenius USA, Inc. v. Baxter International, Inc., 721 F.3d 1330 (Fed.Cir.2013) (“Fresenius II”), cancellation of claims by the Patent and Trademark Office (“PTO”) “requires that non-final judgments be set aside.” Id. Because it finds the judgment in this case non-final, the majority — on the strength of Fresenius II — renders all aspects of the earlier judgment against Lawson, including the injunction premised thereon, a nullity. I respectfully dissent from that aspect of the majority’s opinion because Fresenius II is distinguishable from, and I do not believe governs, the present appeal. I write separately, moreover, to note that, if we are bound by Fresenius II on these facts, I find Freseni-us II even more troubling than I initially believed. Fresenius USA, Inc. v. Baxter Int’l, Inc., 733 F.3d 1369, 1373-81 (Fed.Cir.2013) (O’Malley, J., dissenting from denial of petition for rehearing en banc) (“Fresenius II Denial of En Banc ”). If Fresenius II compels the conclusion here, it should be reconsidered.
I
I begin by addressing the majority’s revisions to the originally-issued opinion in this case, made in response to legitimate criticisms of the panel opinion set forth in the Petition for Panel Rehearing and Rehearing En Banc. Rather than correct the legal errors in its original decision, the majority now attempts to justify that decision by rewriting the record and recharac-terizing our decision in ePlus, Inc. v. Lawson Software, Inc., 700 F.3d 509 (Fed.Cir.2012) (“ePlus /”). The majority newly claims that “[w]e go no further than we did in Fresenius in deciding this case.” Maj. Op. at 1358. It tries to vindicate its expansive view of finality by asserting that the landscape it initially addressed in this ease was something other than first described — and something other than it was. Although the majority tries hard to conjure a record upon which it can claim that the injunction at issue in this case was not final when the panel opinion was written, the majority does not succeed. The record nevertheless shows that the majority has stretched the already concerning scope of Fresenius II to an even more untenable place. Maj. Op. at 1358-61.
*1363 A
In ePlus I, we faced an appeal from a district court judgment which found system claim 3 and method claims 26, 28, and 29 of U.S. Patent No. 6,023,683 (“the '683 patent”), as well as system claim 1 of U.S. Patent No. 6,505,172 (“the '172 patent”), valid and infringed. ePlus, Inc. v. Lawson Software, Inc., No. 3:09-cv-620, 2011 WL 3584313, at *3-4 (E.D.Va. Aug. 12, 2011). Predicated on that judgment, the district court enjoined all activities that would constitute continuing infringement of those claims, including sales of all infringing configurations — designated Configuration Nos. 2, 3, and 5, as well as the M3 e-Procurement System. See ePlus Inc. v. Lawson Software, Inc., 946 F.Supp.2d 459, 471 (E.D.Va.2013). The court specifically found that sales of Configuration 2 infringed claim 1 of the '172 patent, and sales of the other three configurations infringed both system claims and all three method claims. ePlus, Inc. v. Lawson Software, Inc., No. 3:09-cv-620, 2011 WL 2119410, at *4 (E.D.Va. May 23, 2011) (noting that: (1) the jury found that Configurations 3 and 5 infringed inter alia claim 26 of the '683 patent but Configuration 2 only infringed claim 1 of the '172 patent, and (2) the court found that the M3 e-Procurement system infringed on the basis of a pre-trial stipulation). Importantly, with respect to the relevant system and method claims, including claim 26, the district court found that “[ejvidence demonstrated that Lawson actively induces its customers’ direct infringement by selling and offering to sell the infringing systems with the intent that its customers use those systems in an infringing manner.”[2] ePlus, 2011 WL 3584313, at *4 (emphasis added). The court determined that Lawson also induced infringement by installing and configuring the infringing systems as well as by providing technical support and training. Id. Lawson’s customers therefore directly infringed each of the challenged method claims of the '683 patent, including claim 26, by their use of the “accused systems,” and Lawson induced that specific form of direct infringement by “selling and offering to sell the infringing systems.” Id. There is no doubt that the injunction entered by the district court was predicated, among other findings, on an express finding of infringement of method claim 26 due to Lawson’s sales of the infringing configurations to its customers.[3] In response to Lawson’s purported continuing infringing activities in light of the injunction, ePlus initiated contempt proceedings against Lawson, arguing that the design-around RQC module was not more than colorably different from the infringing RSS module. ePlus, 946 F.Supp.2d at 475-76.
*1364 In ePlus I, Lawson appealed the validity of the two system claims, the jury’s infringement findings as to all claims, and the district court’s entry of an injunction. ePlus I, 700 F.3d at 516-17. Importantly, Lawson did not appeal the validity determinations regarding claims 26, 28, and 29 of the '683 patent. Further, although it did appeal the infringement determinations as to claims 26, 28, and 29, it did not assert that the number of claims infringed by Lawson’s systems impacted the validity or scope of the injunction. Lawson never contended that it was somehow less appropriate to enjoin infringement of one valid claim than it would be to enjoin infringement of any other claim. Importantly, Lawson argued that the injunction was too broad because it enjoined not just the sale of the infringing products, but also servicing and maintenance of products sold prior to the injunction. Id. at 522. But that was the only appellate attack Lawson made regarding the injunction.
We concluded that the system claims were invalid as indefinite, and reversed the district court’s denial of judgment as a matter of law for noninfringement of claims 28 and 29 of the '683 patent. Id. at 523. With respect to infringement of claim 26, however, we held that “there remains no serious dispute that Lawson’s customers infringe claim 26.” Id. at 520. We then stated that “[flinally, we have reviewed the record and are satisfied that it contains sufficient evidence of Lawson’s intent and knowledge to allow a reasonable jury to conclude that Lawson induced its customers to infringe claim 26.” Id. at 521. We were also unpersuaded by Lawson’s argument that there was insufficient evidence that Lawson was a contributory infringer.[4] Id. at 523 n. 2. We thus affirmed that Lawson induced infringement and engaged in contributory infringement through “selling and offering to sell the infringing systems,” and we did so without hesitation. See ePlus, 2011 WL 3584313, at *4. After this determination, we reversed the infringement findings as to claims 28 and 29, but never questioned the continuing validity of the injunction as to the sales found to infringe claim 26. Indeed, we examined and affirmed both the fact and scope of the injunction after our rulings on claims 28 and 29. Id. at 522. We never implied (and Lawson never questioned) whether the propriety of the injunction varied according to the number of claims infringed. Id. (“Here, however, it just so happens that because of the district court’s enforcement of the discovery rules, ePlus was not permitted to present any evidence of damages. That does not mean that Lawson was authorized to sell products that infringe ePlus’s patent.”). We therefore affirmed the infringement finding as to claim 26, retained the injunction barring sales of all configurations that infringed claim 26, and returned the case to the district court with a very limited remand instruction: ‘We re *1365 mand to the district court to consider what changes are required to the terms of the injunction, consistent with this opinion. In all other respects, we affirm.” Id. at 523. We did not, as the majority now claims, “overturn[]” the injunction. Maj. Op. at 1851.
Indeed, at the point at which we remanded to the district court, it is hard to conceive how “the propriety of the injunction against sales and manufacturing was still an issue_” Maj. Op. at 1361. We had affirmed that substantial evidence supported the district court’s conclusion that Lawson induced infringement of claim 26 through sales of certain accused configurations. We did not vacate the district court’s injunction, request that the district court “revise or reconsider the injunction,” as we did in Fresenius USA, Inc. v. Baxter International, Inc., 582 F.3d 1288, 1293 (Fed.Cir.2009) (“Fresenius I ”), or even alter the scope of the injunction in light of Lawson’s direct challenge. We merely remanded for the district court to consider whether and if “changes are required” in light of the district court’s inherent continuing equitable powers to prospectively adjust an injunction due to our invalidation of claim 1 of the '172 patent. The judgment that claim 26 was valid and infringed — -one of the judgments upon which the injunction was predicated — remained intact, as did the injunction.
It is therefore unsurprising that the district court, on remand, found that we “affirmed the judgment of direct and indirect infringement of [cjlaim 26, rejected Lawson’s challenge to the breadth of the injunction, and held that ‘[t]o the extent that we have not addressed any of the parties’ arguments on appeal or cross-appeal, we have determined them to be unpersuasive,’ ” thus concluding that “it is rather clear that the Court of Appeals affirmed the decision to issue the injunction.” ePlus, 946 F.Supp.2d at 463 (quoting ePlus I, 700 F-.3d at 523 n. 2). The only, modification necessary under our remand instruction “consistent with [our] opinion” involved removing Configuration 2 from the scope of the injunction because claim 1 of the '172 patent, the sole basis for infringement by Configuration 2, was held invalid. Id. at 471. But the district court did not vacate the injunction as to the other configurations prospectively, and, in fact, found that all four of the eBay factors supported prospectively continuing the injunction. Id. at 467-70. The district court further held that it could not reconsider the injunction retrospectively on the basis of the mandate rule. Id. at 463. Although the majority now states that the “propriety of the injunction ... was still at issue” after ePlus I, Maj. Op. at 1361, there is no language in ePlus I that supports that revisionist view of what we did; the district court correctly concluded that our mandate in ePlus I foreclosed any challenges to retrospective aspects of the injunction. The district court’s analysis of the continuing prospective validity of the injunction under its inherent equitable power says nothing about the finality of our judgment in ePlus I. Notably, even Lawson did not believe the remand was flexible enough to allow for reconsideration of the injunction. It resorted to Rule 60(b) in an effort to set aside that previous judgment, something it would not have had to do if we had actually vacated the injunction as the majority’s “clarification” now appears to claim.
Although the majority cites to extensive case law regarding inducement and the requirements for inducement as applied to sales of “an apparatus capable of performing the method,” Maj. Op. at 1360, that case law is inapposite' — -the district court and the jury already concluded that Lawson induced infringement through sales of the accused configurations, and we affirmed the district court’s conclusion that substantial evidence supported that result. *1366 To use the majority’s words, had we questioned the propriety of enjoining sales that infringed claim 26 or wanted to vacate the injunction, it would have been easy enough to say so. We know how to vacate an injunction when we want to; we simply did not do so in this case. Saying now that a purported “non-final” injunction, Maj. Op. at 1357, remained at issue after ePlus I does not make it so when the record reflects otherwise.
B
I turn now to whether Fresenius II mandates the decision in this case. The majority claims that it “goes no further than we did in Fresenius in deciding this case,” Maj. Op. at 1358, but the facts of Fresenius II do not bear the weight allotted them by the majority. In Fresenius II, a panel of this court held that “cancellation of claims during reexamination would be binding in concurrent litigation,” and, while “cancellation of a patent’s claims cannot be used to reopen a final damages judgment ending a suit based on those claims,” there can be “no final judgment binding the parties” “where the scope of relief remains to be determined.” 721 F.3d at 1339, 1341 (emphasis added). The actual record here is different than the record before us in Fresenius II.
In the initial district court litigation between Fresenius and Baxter, Fresenius brought suit seeking a declaratory judgment that the claims of three patents were “invalid and not infringed by Fresenius’s hemodialysis machines.” Fresenius I, 582 F.3d at 1293. The district court granted Baxter judgment as a matter of law, finding that the jury’s obviousness verdict was not supported by substantial evidence. Id. After a separate jury trial on damages, the jury awarded Baxter over $14 million in pre-verdict damages. Id. at 1294. The district court issued a permanent injunction against Fresenius, but delayed implementation of the injunction to allow Fre-senius time to develop a non-infringing machine. Id. In lieu of the immediate injunction, the district court ordered Fre-senius to pay an on-going royalty for any infringing machines sold prior to the injunction taking effect. Id. Fresenius appealed the district court’s grant of judgment as a matter of law regarding validity, the permanent injunction, the ongoing royalty award, and claim construction. Id. Fresenius, however, did not appeal the pre-verdict damages award, only the prospective royalties and injunction.
In Fresenius I, we reversed the district court’s grant of judgment as a matter of law for all but six claims of one of Baxter’s patents. Id. at 1304. For those six claims, we held that Fresenius failed to prove invalidity. Id. We remanded to the district court with the following instruction: “[W]e vacate the injunction and remand so that the court may revise or reconsider the injunction in light of the fact that only claims 26-31 of the '434 patent remain valid and infringed. Finally, we vacate the royalty award entered by the district court and remand for further proceedings consistent with this opinion.” Id.
On remand, Fresenius argued that no injunction should issue, the post-verdict ongoing royalty amount was unreasonable, and it should receive a “new trial for pre-verdict damages for infringement of [U.S. Patent No. 5,247,434].” Fresenius II, 721 F.3d at 1333. The district court declined to enter an injunction as the relevant patent had expired, awarded Baxter new post-verdict damages at a reduced royalty, and denied Fresenius’s motion for a new pre-verdict damages trial. Id. While Freseni-us’s second appeal was pending, we affirmed a decision of the PTO cancelling the remaining claims of the '434 patent in an ex parte reexamination proceeding. In re Baxter Int’l, Inc., 678 F.3d 1357, 1366 *1367 (Fed.Cir.2012). The Fresenius II panel concluded that, because we vacated the injunction and the royalty award, and remanded for “further proceedings consistent with this opinion” in Fresenius I, 582 F.3d at 1304, the litigation was not final as we left the district court with more to do than simply “execute the judgment.” Fre-senius II, 721 F.3d at 1341. Because we found the “scope of relief remained] to be determined,” there was “no final judgment binding the parties,” and the reexamination “extinguishe[d] the underlying basis for suits based on the patent.” Id. at 1341, 1344.
There are crucial differences between the facts in the present appeal and the facts in Fresenius II. First, although Fre-senius failed to appeal the pre-verdict damages judgment from the district court, it did appeal the validity of all relevant claims-at-issue, and did move for a new trial on pre-verdict damages on remand premised on the “further proceedings” language in our remand instruction. In the present appeal, Lawson never appealed the validity of claim 26 of the '683 patent and never sought to press the issue again, either before the trial court or this one. The judgment that claim 26 of the '683 patent was valid became final when the district court entered final judgment and Lawson chose not to appeal that judgment to this court. While the PTO did find claim 26 of the '683 patent to be invalid through ex parte reexamination proceedings, and we affirmed that decision in In re ePlus, Inc., 540 Fed.Appx. 998 (Fed.Cir.2013), the validity of claim 26 of the '683 patent as between ePlus and Lawson with regards to the continuing injunction (at least until the decision in In re ePlus mandated) was final well before that point in time. See Function Media, L.L.C. v. Kappos, 508 Fed.Appx. 953, 956 (Fed.Cir.2013) (holding that a party’s failure to appeal from a district court’s judgment of no invalidity barred that party from seeking reexamination of those claims); Odetics, Inc. v. Storage Tech. Corp., 185 F.3d 1259, 1275 (Fed.Cir.1999) (holding that failure of a party to cross-appeal the issue of validity “preclud[ed] further consideration of the issue”); cf. Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co., 510 F.3d 474, 481 (4th Cir.2007) (the mandate rule “forecloses litigation of issues decided by the district court but foregone on appeal”); Bullen v. De Bretteville, 239 F.2d 824, 829 (9th Cir.1956), overruled on other grounds, Lacey v. Maricopa Cnty., 693 F.3d 896 (9th Cir.2012) (“A ease remanded for further hearing or over which jurisdiction is retained for some purposes may nonetheless be final as to other issues determined.”).
Second, the remand instructions in ePlus I and Fresenius I were different in important, material respects. In Freseni-us I, we vacated the injunction and the post-verdict royalty awards, instructed the district court to “revise or reconsider” the injunction, and remanded “for further proceedings consistent with this opinion.” Fresenius I, 582 F.3d at 1304. By vacating the injunction, we required the district court to analyze the injunction anew. And, in Fresenius II, we found that by remanding “for further proceedings consistent with this opinion,” the district court was free to consider other aspects of the case, including Fresenius’s motion for a new trial regarding pre-verdict damages. Here, we did not vacate the injunction, which was the only form of remedy available to ePlus. By not vacating the injunction, the injunction remained in force and any on-going infringing activity by Lawson would be potential contemptible conduct. We did no more than suggest that the district court “consider” any necessary changes to the injunction, consistent with the district court’s equitable powers; we did not direct the district court to “revise or reconsider” the injunction. Finally, we conspicuously did not remand for “any fur *1368 ther proceedings consistent with this opinion.” As the majority in Fresenius II recognized in distinguishing Qualcomm, Inc. v. FCC, 181 F.3d 1370, 1380 (D.C.Cir.1999), the scope of the appellate remand instruction is crucial to the preclusive effect of an intervening PTO reexamination determination. Fresenius II, 721 F.3d at 1346 n. 12.
The Fresenius II majority concluded that the remand instruction in Qualcomm was for “specific, immediate relief for a party,” while it found the remand instruction in Fresenius I more open-ended — “for further proceedings.” Id. The remand instruction in ePlus I, like that in Qual-comm, did contemplate “specific, immediate-relief for a party” — Configuration 2 should be removed from the scope of the injunction, but the injunction remains in force subject only to the district court’s continuing equitable power over it. And, the remand instruction in ePlus I noticeably does not include an order for the district court to undertake “further proceedings.” Fresenius I, 582 F.3d at 1304. Thus, the more limited scope of the remand order from ePlus I differentiates the present appeal from that in Fresenius.
Finally, the nature of the remedies at issue on appeal distinguishes the two cases. In Fresenius II, the majority determined that both pre-verdict and post-verdict damages would be vacated in light of the PTO reexamination results because the ' majority said the general scope of monetary remedies was not yet final. Even if true in Fresenius, that is not the case here. As noted, I agree with the majority that the injunction should be vacated prospectively from the date when In re ePlus mandated, and that any coercive civil remedies should be vacated because it would be inappropriate to force Lawson to comply with an injunction that is no longer enforceable. As the majority correctly states, an injunction is a “continuing decree” that must not be enforced prospectively if the right underlying the decree is abrogated. Maj. Op. at 1354-56 (quoting Pennsylvania. v. Wheeling & Belmont Bridge Co., 59 U.S. (18 How.) 421, 422, 15 L.Ed. 435 (1855)). I disagree, however, that the results of In re ePlus require that we vacate the compensatory civil contempt order.
Lawson’s conduct giving rise to the contempt order occurred while the injunction, with regards to Configurations 3 and 5, remained valid under ePlus I. Although we remanded to allow the district court to use its inherent equitable powers to remove Configuration 2 from the scope of the injunction, we retained the jury’s infringement finding with regards to claim 26 of the '683 patent, Lawson did not appeal the validity of claim 26, and we did not vacate the injunction. In a contempt proceeding, the putative contemnor may not challenge the correctness of the underlying order or attack the validity of the underlying basis for an injunction unless the court issuing the injunction had no jurisdiction to do so.[5] Maggio v. Zeitz, 333 *1369 U.S. 56, 68-69, 68 S.Ct. 401, 92 L.Ed. 476 (1948); Proveris Scientific Corp. v. Innovasystems, Inc., 739 F.3d 1367, 1370 (Fed.Cir.2014) (“ ‘In a contempt proceeding to enforce [an] injunction ..., the only available defense for anyone bound by the injunction was that the [newly accused product] did not infringe.... Validity and infringement by the original device were not open to challenge.’ ” (quoting Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc., 154 F.3d 1345, 1350 (Fed.Cir.1998))). All that remained available for review in the current appeal was the prospective validity of the injunction and the propriety of findings made during the contempt proceeding, not the underlying basis for the injunction at issue in the contempt proceeding. Thus, the underlying basis of the contempt award, which is the only aspect of the contempt proceeding that could be influenced by the results of In re ePlus, was not at issue during the district court contempt proceedings, and is not at issue in this appeal.
Although the majority assures us that “[w]e go no further than we did in Fresen-ius in deciding this case,” Maj. Op. at 1358, the facts of the instant appeal present a different picture than those recited in the majority opinion and show substantial, important distinctions from the facts in Fre-senius II. For these reasons, I believe that the majority incorrectly holds that Fresen-ius II requires that we vacate the compensatory contempt award in light of In re ePlus.[6] And, I believe that the majority today narrows even further the already stingy version of finality set forth in Fre-senius II.
II
Finally, if the majority is correct that Fresenius II requires us to vacate the compensatory contempt award,[7] even though Lawson failed to appeal the judgment finding claim 26 of the '683 patent valid and even though we did not vacate the injunction or remand for open-ended proceedings, then Fresenius II is even more concerning than I first believed. I continue to believe that we wrongly decided Fresenius II. As detailed in my dissent to the denial of the Petition for Rehearing en Banc in Fresenius II, Fresenius II Denial of En Banc, 733 F.3d at 1373-81 (O’Malley, J., dissenting from denial of petition for rehearing en banc), the majority in Fresenius II erroneously analyzed both the finality of the issues on appeal and the scope of our appellate remand instruction in Fresenius I. These arguments apply with even greater force and urgency here.
*1370 The majority’s approach to finality will further displace the critical role of district courts in patent infringement suits. According to the majority, a decision of the PTO, an administrative agency under a coordinate branch of government, can displace a judgment of an Article III court. Validity of claim 26 became final when Lawson failed to appeal the issue in ePlus I and our disposition did not reopen the judgment for any further proceedings regarding the validity of any of the claims-at-issue, nor did it leave the remedy open in the sense Fresenius II said Fresenius I did. By extending Fresenius II to these materially different circumstances, the majority assumes that any determination made during an infringement case, even if that specific issue is never appealed, can be nullified by the action of an administrative agency as long as anything — even a fully discretionary “consideration” of an intact remedy — remains available. The majority’s approach essentially allows an executive agency to render both the panel opinion in ePlus I and the district court’s judgment regarding validity as advisory opinions. That result ignores the role of Article III courts in our constitutional structure. See Haybum’s Case, 2 U.S. (2 Dali.) 409, 411 (1792) (Chief Justice Jay and Justice Cushing writing, in an opinion for the Circuit Court for the District of New York, that the executive branch may not “sit as a court of errors on the judicial acts or opinions” of the federal courts); Qualcomm, 181 F.3d at 1379-80 (discussing Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 240, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995), and the protection granted to final judgments of Article III courts from invalidation by coordinate branches under the separation of powers doctrine).
The majority’s approach is contrary to the well-established law of finality when the merits of an issue are conclusively decided. Fresenius II Denial of En Banc, 733 F.3d at 1375-77 (O’Malley, J., dissenting from denial of petition for rehearing en banc). And the majority opinion further deepens the circuit split between our court’s approach to finality and that of our sister circuits, as identified by Judge Newman in her dissent in Fresenius II. 721 F.3d at 1355-59 (Newman, J., dissenting). Although it is true that a district court, in its equitable powers, retains the ability to alter the scope of an injunction prospectively, the district court here lacked the power to vacate the merits underlying our finding of infringement once the Supreme Court denied certiorari after ePlus I. Even further, we lacked the power in ePlus I to alter the jury’s finding regarding the validity of claim 26 of the '683 patent because Lawson did not appeal that issue. The majority, nevertheless, breaks away from well-established notions of finality to hold that the jury’s final determination that claim 26 was not invalid — a judgment justifying the injunction that led to the compensatory civil contempt order — must be vacated in light of a later determination by an executive agency.
The majority opinion also creates uncertainty for any future compensatory contempt awards due to the unique nature of injunctions, a point not .contemplated in Fresenius II. District courts always retain the equitable power to revise injunctions prospectively in light of changed circumstance. Does this mean that, where an injunction is entered, the “scope of relief remains to be determined” in perpetuity? Maj. Op. at 1358. Even if we had affirmed all grounds in ePlus I and did not remand, Lawson could still have filed a Rule 60(b) motion and argued that, as long as the contempt proceedings were on appeal the “scope of relief remains to be determined” under the district court’s continuing power over the injunction. Would we have to vacate every civil contempt award where a *1371 later PTO decision invalidates the patent at issue in those contempt proceedings? [8]
The majority decision today exacerbates the circuit split between the Federal Circuit and the United States Court of Appeals for the District of Columbia Circuit (“D.C. Circuit”). As noted, the Fresenius II majority distinguished Qualcomm by arguing that the D.C. Circuit ordered “specific” relief on remand, while our order for remand in Fresenius I was not sufficiently specific. Fresenius II, 721 F.3d at 1346 n. 12. Here, our remand order was significantly more specific than in Freseni-us II — only allowing the district court to alter the scope of the injunction within its inherent equitable powers, but not permitting the district court to upset the final determinations on the merits or allowing the district court to undertake further proceedings. The majority here argues, however, that Fresenius II applies, despite our more specific remand instruction in ePlus I. It appears that no remand instruction would ever be specific enough to protect the integrity of an Article III court’s judgment as long as any “remand” occurs. That view strains concepts of finality beyond all recognition.
Finally, as I noted in my dissent from denial of rehearing en banc in Fresenius II Denial ofEn Banc, 733 F.3d at 1380-81 (O’Malley, J., dissenting from denial of petition for rehearing en banc), the view of finality we espouse in these two cases is a view of finality which is wildly divergent from that employed by this very court in other contexts. In Robert Bosch, LLC v. Pylon Manufacturing Corp., 719 F.3d 1305 (Fed.Cir.2013) (en banc), this court held, en banc, that liability determinations in patent cases are final for purposes of immediate appeal under 28 U.S.C. § 1292(c), even when a jury trial on damages and willfulness remains. See id. at 1316, 1319-20. There, we concluded (albeit incorrectly in my view) that damages and willfulness determinations are sufficiently “ministerial” to constitute no more than an “accounting” within the meaning of § 1292(c), thus rendering the liability determination a “final” judgment for purposes of appeal.
Despite the very liberal view of finality we employed in that context, we continue to declare that we must employ the stingiest view of that concept when deciding at what point parties may rely on litigated determinations of their rights. This chasm between the sweeping rule laid down both in Fresenius II and here and the one the court established in Bosch is confusing. Notably, finality often may be applied less strictly for preclusion purposes than for purposes of appeal, not more so. See Miller Brewing Co. v. Joseph Schlitz Brewing Co., 605 F.2d 990, 996 (7th Cir.1979) (“To be ‘final’ for purposes of collateral estoppel the decision need only be immune, as a practical matter, to reversal or amendment. ‘Finality’ in the sense of 28 U.S.C. § 1291 is not required.”); see also Syverson v. Int’l Bus. Mach. Corp., 472 F.3d 1072, 1079 (9th Cir.2007); Henglein v. Colt Indus. Operating Corp., 260 F.3d 201, 209-10 (3d Cir.2001) (“[W]e commented that finality for purposes of issue preclusion is a more ‘pliant’ concept than it would be in other contexts.”); Swentek v. USAIR, Inc., 830 F.2d 552, 561 (4th Cir.1987) (“Finality for *1372 purposes of collateral estoppel is a flexible concept....”), abrogated, on other grounds, Mikels v. City of Durham, N.C., 183 F.3d 323 (4th Cir.1999); Pye v. Dep’t of Transp. of Georgia, 513 F.2d 290, 292 (5th Cir.1975) (“To be final a judgment does not have to dispose of all matters involved in a proceeding.”); Zdanok v. Glidden Co., 327 F.2d 944, 955 (2d Cir.1964). Thus, it would seem that our jurisprudence should be the reverse of what it has become.
I see no way to reconcile the liberal view of finality for appeal purposes we adopted in Bosch with today’s view that finality almost never exists for preclusion purposes. I dissent from the majority’s decision. I would proceed to consider the merits of Lawson’s appeal from the trial court’s civil contempt findings.

. While Lawson contends it did not violate the district court’s injunction, because the majority does not reach that question, neither do I. The current record contains a district court finding that Lawson did violate the injunction. The question I debate with the majority is whether we can reach the merits of that finding.

. Lawson challenged "the jury’s verdict with respect to indirect infringement,” claiming that the verdict “was supported by insufficient evidence.” ePlus, 2011 WL 3584313, at *4. The district court disagreed. As quoted by the majority, Maj. Op. at 1361 n. 13, the court concluded that for each of the five claims at issue, there was sufficient evidence to uphold the jury’s finding of induced infringement on the basis of Lawson’s "selling and offering to sell the infringing system.” ePlus, 2011 WL 3584313, at *4. The district court’s collective treatment of all five claims, and its determination that substantial evidence of Lawson’s sales supported the jury’s finding of induced infringement for each of the five claims, does not mean there remains a "substantial question as to which activities ... could still be enjoined.” Maj. Op. at 1361 n. 13. It is, indeed, notable that the parties did not question what activities would be enjoined if any of the verdicts were affirmed.

. Prior to entering the injunction, the district court excluded ePlus’s expert report regarding damages, and did not permit ePlus to present evidence of damages due to prior discovery sanctions. ePlus I, 700 F.3d at 515. Thus, ePlus’s only available remedy was an injunction.

. We stated in ePlus I that "[t]o the extent that we have not addressed any of the parties' arguments ..., we have determined them to be unpersuasive.” 700 F.3d at 523 n. 2. The district court concluded that Lawson contri-butorially infringed, ePlus, 2011 WL 3584313, at *4 ("The jury heard and received substantial evidence to support a finding of indirect infringement of the claims, on either an inducement or contributory infringement basis.” (emphasis added)), and the injunction barred Lawson from "directly or indirectly” making, using, offering to sell, selling, or importing the accused Configurations. Joint Appendix (“JA”) 1-4. Lawson argued in its merits brief on appeal that, to the extent ePlus relied on a contributory infringement theory to proye infringement of the method claims, ePlus failed to prove contributory infringement. Accordingly, because we did not address contributory infringement in ePlus I, we found Lawson's arguments regarding contributory infringement "unpersuasive,” and did not disturb the district court’s contributory infringement determinations concerning claim 26.

. The cases the majority relies upon, such as McLean v. Central States, Southeast & Southwest Areas Pension Fund, 762 F.2d 1204 (4th Cir.1985); Scott & Fetter Co. v. Dile, 643 F.2d 670 (9th Cir.1981); ITT Committee Development Corp. v. Barton, 569 F.2d 1351 (5th Cir.1978); Blaylock v. Cheker Oil Co., 547 F.2d 962 (6th Cir.1976); Latrobe Steel Co. v. United Steelworkers of America, AFL-CIO, 545 F.2d 1336 (3d Cir.1976), all involved both the underlying injunction and the contempt order simultaneously on direct appeal. The majority characterizes these cases as "involv[ing] orders whose merits were still subject to review when the civil contempt sanctions were reviewed.” Maj. Op. at 1358 n. 8. Here, Lawson failed to appeal the validity of claim 26 of the '683 patent, we affirmed the jury’s finding of infringement on that patent, and we did not vacate the injunction.
The majority further relies on Worden v. Searls, 121 U.S. 14, 7 S.Ct. 814, 30 L.Ed. 853 (1887). Like the cases noted above, Worden *1369 involved an injunction and contempt order which were simultaneously on direct appeal. Worden stands for “the proposition that the right to fines for violation of a preliminary injunction is founded on that injunction which in turn is predicated on the validity of the patent.” Fresenius II Denial of En Banc, 733 F.3d at 1376 n. 5 (O’Malley, J., dissenting from denial of petition for rehearing en'banc). Worden thus permits prospective challenges to an injunction and prevents a contempt finding predicated upon an injunction after the predicate for it no longer exits. Id. ("Thus, while the PTO’s cancellation of the patent renders it prospectively invalid, the cancellation cannot render a prior judgment for damages invalid.”). We affirmed the underlying injunction in ePlus I, rendering the injunction retrospectively final. Thus, because the contemptible conduct occurred before the PTO invalidated the patent upon which the retrospectively final injunction was predicated, it is not "curious” that Worden does not apply to these facts.

. As noted, given the grounds for our decision here, I express no opinion on the merits of Lawson’s objections to the contempt findings.

. And is correct that the present appeal does not "go ... further than we did in Fresenius [J/].” Maj. Op. at 1358.

. Indeed, parties have begun reading Freseni-us II broadly, arguing that the policies and rationales underlying that decision justify reopening even admittedly final judgments to give effect to later PTO decisions. See, e.g., Versata Software, Inc. v. SAP Am., Inc., No. 2:07-cv-l 53-RSP, 2014 WL 1600327, at *2 (E.D.Tex. Apr. 21, 2014) (dismissing infringer’s argument that its Rule 60(b)(6) motion to reopen a final judgment of validity should be granted in light of a later Board determination of invalidity), aff d sub nom. Versata Computer Indus. Solution v. SAP Am., Inc., 564 Fed.Appx. 600 (Fed.Cir.2014) (per curiam).